SALTER, J.
The Secretary of State of Florida, Kurt Browning, appeals a circuit court order certifying a class of corporate plaintiffs asserting that late annual report and reinstatement fees paid to the Secretary by them violated the Excessive Punishments section of the Florida Constitution. See Art. I, § 17, Fla. Const.[1] We affirm the *357 class certification order insofar as it addresses three of the four threshold requirements imposed by Florida Rule of Civil Procedure 1.220(a) — these three are commonly referred to as numerosity, commonality, and typicality. We reverse and remand regarding the fourth requirement, however — adequacy of the proposed class representatives — because the relief sought by the plaintiffs, the likely out-of-pocket costs for the litigation, and the financial ability of the proposed representatives to bear those costs, were not adequately established by the appellees.

The Claims and the Procedural History

In September 2000, appellee Angelfish Swim School, Inc., a Florida corporation, filed a late annual report and paid a late charge of $400 to the Secretary as required by section 607.193(2)(b), Florida Statutes (2000). The late charge was payable in addition to the annual corporate report fee of $61.25, see section 607.0122, and the annual supplemental corporate fee of $88.75 then payable, see section 607.193(1), if the annual report and fees were remitted after May 1 of any calendar year. The second plaintiff below and ap-pellee here, Steak on the Run, Inc., also a Florida corporation, alleged that it was administratively dissolved by the Secretary in October 1998, and in May 2000 was required to pay the $600 statutory reinstatement application fee, see section 607.0122(13), as well as the three outstanding annual report and supplemental corporate fees ($150 for each year).
These two plaintiffs alleged in their amended class action complaint that the $400 late charge and $600 reinstatement fee violated the excessive punishments provision, and in a single count Angelfish and Steak sought “declaratory relief’ under “F.S. 68 et seq. [sic].”[2] The amended class action complaint also alleged that the late charges and reinstatement fees are a “denial of due process and equal protection under the law,” but the equal protection claim was rejected by the trial court in an order granting partial summary judgment. The prayers for relief did not make it clear what monetary relief, if any, Angelfish and Steak sought as a result of the alleged unconstitutionality of the late charge and reinstatement application fee — a disgorgement of all such payments, or of only that portion of such payments found by the trial court to be “excessive.”[3]
Discovery ultimately revealed that over 249,000 Florida corporations paid the $400 late fee between 1997 and 2007, and over 97,000 paid a $600 reinstatement application fee. The resulting arithmetic indicates that Angelfish and Steak — each of which lacked the attention or wherewithal to file a timely annual report or to remit $150 as required by Florida law[4] — are *358 proposing that they are adequate class representatives for several hundred thousand separate entities that paid aggregate charges to the Secretary exceeding $150 million. As analyzed in greater detail below, if Angelfish and Steak are seeking a disgorgement of all those charges and a payment of statutory prejudgment interest on the charges, see section 55.03, Florida Statutes (2000) (applicable because the amounts in question are liquidated), the aggregate claim against the State of Florida would likely exceed $300 million.
Pre-certification discovery also included the depositions of the principals of Angelfish and Steak who would serve as the class representatives. The representative of Angelfish was unfamiliar with its fee agreement with counsel. Angelfish’s counsel instructed the representative (who testified that he was the person with greatest knowledge of the corporation’s assets, income, and liabilities for the period 1998 to present) not to answer questions regarding those “privileged financial matters.” At the class certification hearing, Angelfish’s representative testified that he thought he could afford a mailing, relying on personal and corporate funds, but he was uncertain what other costs might be involved in a class action.
Steak’s corporate representative was more forthcoming about that corporation’s financial condition, but the information was bleak. Steak had no assets at the time of the class certification hearing and had not had any assets or money for five or six years.
Nor did the class certification hearing shed additional light on the relief sought by the putative class. Counsel for Angelfish and Steak did not explain whether the single count amended complaint was limited to declaratory relief, or whether it sought a recovery of all late charges and reinstatement application fees paid, plus prejudgment interest, or whether it sought a recovery of only those charges and fees proven at trial to be “excessive.”
Following the hearing, the circuit court entered the certification order, and this appeal followed.

Analysis

As noted, the first three elements of Rule 1.220(a) were unquestionably present — the class is numerous, the claims of the putative class members involve common issues of law and fact, and the claims of the proposed class representatives are typical of those of the class as a whole. The fourth element, the adequacy of Angelfish and Steak as class representatives, is the issue here.[5]
Ordinarily, the merits of a class claim need not be addressed before the procedural question of class certification is determined. In some cases, however, the two inquiries are interrelated. The dimensions of a class action claim, including the types of relief sought, must be clear so as to guide the court’s assessment of (1) the proposed class representatives’ ability and financial capacity to prosecute the action diligently, and (2) proposed class counsel’s experience and competence. The merits of the underlying claim also bear on the trial court’s exercise of discretion regarding the costs of notice under Rule 1.220(d)(2). See Dep’t of Agric. & Consumer Servs. v. Cox, 947 So.2d 561, 563 (Fla. 4th DCA 2006) “Unless otherwise ordered,” the plaintiffs must bear those costs. Fla. R. Civ. P. 1.220(d)(2).
*359 In this case, it is evident that the Secretary will defend the lawsuit vigorously and thoroughly — if Angelfish and Steak clarify their complaint to confirm that they seek $150 million in disgorgements plus at least that amount again in prejudgment interest, the pretrial proceedings, trial, and appeal will be particularly protracted and expensive. If Angelfish and Steak are only seeking those amounts that are “excessive,” the damages sought from the Secretary will still be huge. Presumably, expert accounting witnesses would be required to guide the trial court in determining what late charges and reinstatement application fees might be reasonable, and what amounts should be held excessive. The present record falls woefully short of demonstrating any capacity on the part of Angelfish and Steak to fund even a part of the costs[6] likely to be incurred in so substantial a case. See Brooks v. S. Bell Tel. & Tel. Co., 133 F.R.D. 54 (S.D.Fla.1990).
This claim is a novel one, and one which would (if validated) also seem to jeopardize a wide variety of statutory late fees in Florida.[7] Such fees and charges are routinely set by the legislature and are therefore presumptively excepted, under Article I, section 18 of the Florida Constitution (the section which immediately follows section 17), from the excessive punishments provision:
Administrative penalties. — No administrative agency, except the Department of Military Affairs in an appropriately convened court-martial action as provided by law, shall impose a sentence of imprisonment, nor shall it impose any other penalty except as provided by law.
The phrase “except as provided by law” plainly implies that a “penalty” imposed by a duly-enacted statute is lawful. “As provided by law” means “as passed by an act of the legislature.” Holzendorf v. Bell, 606 So.2d 645, 648 (Fla. 1st DCA 1992) (citation and internal quotation marks omitted).
Even in those few Florida cases which have considered the intention and application of the excessive punishments provision as applied to “fines,” there is a “strong presumption that the amount of a fine is not unconstitutionally excessive if it lies within the range of fines prescribed by the legislature.” Moustakis v. City of Ft. Lauderdale, No. 08-60124, 2008 WL 2222101, at *1 (S.D.Fla. May 27, 2008) (upholding an uncapped code enforcement fine which exceeded $700,000 on a property with a value of approximately $200,000) (citation omitted). In Riopelle v. Department of Financial Services, 907 So.2d 1220, 1223 (Fla. 1st DCA 2005), the court held that it was required to “grant substantial deference to the legislature’s determination of the appropriate punishment for an offense.”
But the late charges and reinstatement application fees at issue here are less “fines” imposed for a criminal offense than civil administrative penalties. See Hudson v. United States, 522 U.S. 93, 99-100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (describing seven factors and the “clearest proof’ standard applicable to the re-characterization of a civil remedy as a criminal penalty). As to the Secretary’s statutory “late charges” and “reinstatement application *360 fees,” there are even fewer reasons to second-guess the legislature. The federal Excessive Fines Clause[8] — a template for Florida’s Article I, section 17 — “was drafted in an era in which the amount of a fíne was determined by the judiciary; the Clause was thus intended as a limitation on courts, not legislatures.” United States v. 817 N.E. 29th Drive, Wilton Manors, Florida, 175 F.3d 1304, 1309 n. 8 (11th Cir.1999) (citation omitted).
Webster’s Unabridged Dictionary refers as well to the distinctions between “fíne” and “penalty.” A fine is “a sum formerly paid as compensation or for exemption from punishment but now imposed as punishment for a crime — distinguished from forfeiture and penalty,” while a penalty is a “sum recoverable in a civil action by the state for the less serious offenses.”[9]
This brief incursion into the merits is sufficient to confirm that the case is essentially one of first impression and one likely to be fought hammer and tong; that the relief sought by Angelfish and Steak in the amended complaint must be clarified; that the legislatively-imposed charges and fees are entitled to presumptive validation, and thus the likelihood of shifting notice and other costs to the Secretary is low; and that the financial capacity of the proposed class representatives must be clearly established rather than merely argued by counsel.

Conclusion

For these reasons, we affirm the certification order in part and reverse it only as to the “adequacy” requirement imposed by Rule 1.220(a)(4). On remand, the trial court should require Angelfish and Steak to file a second amended complaint indicating “Class Representation” next to the caption;[10] clarifying in the unnumbered introductory paragraph, in paragraph “1,” and in the prayer for relief the nature of any monetary relief sought beyond costs, interest, and attorney’s fees; and clarifying whether relief is sought under a specific section of “F.S. 68[sic],” under one or more provisions of Chapter 86 of the Florida Statutes, or otherwise. When the pleadings are again at issue, the court should require Angelfish and Steak to demonstrate their financial capacity to participate in the costs likely to be incurred in a case of this size and scale. Should it consider it advisable as a matter of judicial efficiency, the court may also, of course, consider a renewed motion for summary judgment based on the second amended complaint and the legal issues raised in it and by this opinion.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
SCHWARTZ, Senior Judge, concurs.

. Article I, section 17, provides in pertinent part:
Excessive fines, cruel and unusual punishment, attainder, forfeiture of estate, indefinite imprisonment, and unreasonable detention of witnesses are forbidden.
The amended complaint makes the same claim under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

. Although the references to Chapter 68 of the Florida Statutes ("Miscellaneous Proceedings”), appear in two separate prayers for relief, the plaintiffs more likely intended to refer to Chapter 86, "Declaratory Judgments.” Section 68.01, Florida Statutes (2000), captioned "Declaring tax assessment invalid," would not appear to apply to any charge, fee, fine, or penalty — only to a tax assessment. This is one of several open issues remanded for clarification.

. In a reply in support of their motion to tax attorneys' fees and costs filed the day before oral argument. Angelfish and Steak maintain that they were allowed to amend the complaint a second time "during the pendency of this appeal” to add a prayer for monetary damages. As described in this opinion, that amendment and the specific relief sought should be considered as part of the remanded class certification hearing. The amendment is not part of the record here.

.The pertinence of these threshold omissions by Angelfish and Steak is obvious — a single mailout to 346,000 prospective class members at 42 cents per envelope would cost over $145,000.

, Similarly, but for our questions regarding the relief actually being sought and the adequacy of the putative class representatives, the other requirements of Rule 1.220(b) would be satisfied — the common issues predominate, and class representation would be superior to other available methods for the fair and efficient resolution of the claims.

. While the class's attorney's fees may be contingent, the costs of mailouts, administration of opt-outs, establishment of a web site, expert witness fees, document production, and transcripts, for example, generally fall in significant part on the class representatives.

. Property taxes that are not paid on time carry a variety of additional charges, for example, including an 18% per annum interest rate between delinquency and tax certificate sale, which bear no apparent relationship to administrative costs or then-prevailing market rates. See § 197.172, Fla. Stat. (2008).

. Amend. VIII, U.S. Const.

. Webster’s Third New International Dictionary of the English Language, Unabridged (3d ed. 1986) (italics in original).

.See Fla. R. Civ. P. 1.220(c)(1).