**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

December 19, 2019

No. 18-11052

Lyle W. Cayce
Clerk

PATSY WEATHERLY; EDITH WICHMAN; MICHELLE MORRISON;
FELIX BRAVO; JON HANNA, et al,

> Plaintiffs–Appellants

v.

PERSHING, L.L.C.,

> Defendant–Appellee

---------------------------------------
Consolidated with 18-11053
---------------------------------------

ETHEL BRONSTEIN; MAURICIO BIGIT POSADA; MIRAM DINORA
MORENO DE BIGIT; MARTHA G. BLANCHET; JOSE LUIS CABRERA
ROCA, et al,

> Plaintiffs–Appellants

v.

PERSHING, L.L.C.,

> Defendant–Appellee

---------------------------------------
Consolidated with 18-11056
---------------------------------------

JOSE DIAZ; NANCY DIAZ; HERMAN DITTMAR; MAGALY VARGAS
DITTMAR; AMADEO MONTERO, et al,

> Plaintiffs–Appellants

No. 18-11052

v.

PERSHING, L.L.C.,

Defendant–Appellee

----------------------------------------
Consolidated with 18-11057
----------------------------------------

TOM HAWK; SALMA BARBAR; ALBERTO BARBAR; BERNARDO RAMON CHAMORRO; JOSE E. COLMENARES, et al,

Plaintiffs–Appellants

v.

PERSHING, L.L.C.,

Defendant–Appellee

----------------------------------------
Consolidated with 18-11072
----------------------------------------

ROBERT POWELL; CARLOS ALFONSI; ERIKA ALFONSI; IDA ALTERIO; RAQUEL BASSAN; ROBERTO CALDERON; LINDA CALDERON; ROBERTO CALVO MURILLO; DIANA CASTRESANA; ANTONIO DOTTI; DELFINA LA ROSA; JESUS GARCIA; MARIA FERNANDA GONZALEZ; PABLO GUEDEZ; HE HUANG; RAFAEL CAMACHO,

Plaintiffs–Appellants

v.

PERSHING, L.L.C.,

Defendant–Appellee

2

No. 18-11052

----------------------------------------

Consolidated with 18-11087

----------------------------------------

BRAULIO A. VARGAS ESPINOSA; EDUARDO BELMONTE; MAURO BELMONTE; LAURA RUIZ; GIAN PAOLO BELMONTE, et al,

Plaintiffs–Appellants

v.

PERSHING, L.L.C.,

Defendant–Appellee

_____

Appeals from the United States District Court
for the Northern District of Texas

_____

Before SOUTHWICK, WILLETT, and OLDHAM, Circuit Judges.

DON R. WILLETT, Circuit Judge:

These consolidated cases arise from the notorious Stanford Ponzi scheme, the second-biggest investor fraud in U.S. history. Convicted financier Allen Stanford, now serving a 110-year prison term, sold billions of dollars' worth of bogus CDs to unwitting investors, many of them retirees seeking "safe" investments for their life savings, paying each new investor-victim "profits" out of funds solicited from newly duped investor-victims. Stanford oversaw a sprawling international financial empire. And a phony one.

Stanford used Stanford Group Company to refer investors to Stanford International Bank, Ltd. Plaintiffs–Appellants (the Investors) purchased what they thought were low-risk CDs from SIBL. Defendant–Appellee, Pershing,

3

provided clearing services for SGC.[1] The Investors allege that Pershing breached its fiduciary duty and committed indirect fraud under Florida law. But there is a snag. Both claims were filed late under Florida's statute of limitations. The Investors contend that they were entitled to more time—that the statute of limitations should be tolled because they were putative class members in a previous class action against Pershing. The district court disagreed, holding that the Investors' claims were late and had no hope of tolling relief.

The question on appeal is simply stated: Are the Investors entitled to tolling? They are not. The Florida Legislature has laid out an exclusive list of tolling exceptions, and class actions are not on the list. The foremost task of legal interpretation is divining what the law is, not what the judge-interpreter wishes it to be. We cannot embellish Florida law under the guise of interpreting it. All to say, we decline to infer such an exception where one does not plainly exist. Embroidering the statute may scratch an equitable itch, but "law, without equity, though hard and disagreeable, is much more desirable for the public good, than equity without law: which would make every judge a legislator, and introduce most infinite confusion."[2] Judges must resist the temptation to alter a statute to realign perceived inequities, particularly where, as here, the legislature has proven itself adept at listing exceptions.

The federal policy of tolling for putative class members cannot override the governing statute. Because we hold that the Investors' claims are barred by Florida's statute of limitations, we do not reach the merits of those claims.

We AFFIRM the district court's judgment.

---

[1] Clearing services do things like executing and settling trades, issuing statements, processing wire transfers, and maintaining custody of stocks and bonds.

[2] 1 WILLLIAM BLACKSTONE, COMMENTARIES ON THE LAW OF ENGLAND 62 (4th ed. 1770).

No. 18-11052

I

Stanford's infamous Ponzi scheme became public in February 2009, when the SEC filed its civil complaint. The story was in national newspapers within two days. Later that year, class counsel for swindled investors filed *Turk v. Pershing, LLC*, No. 9-02199 (N.D. Tex. Nov. 18, 2009), alleging that Pershing, as Stanford's clearing agent, (1) "was aware or should have been aware of Stanford's scheme" and (2) profited from Stanford's shady dealings. *Turk* had a putative nationwide class of all persons who bought Stanford CDs. But counsel in *Turk* eventually offered to narrow its Florida subclass to exclude plaintiffs who did not transfer money directly through Pershing.

This case stems from *Turk* counsel's attempt to narrow its Florida subclass; the plaintiffs here are those former *Turk* plaintiffs who did not transfer money directly through Pershing. The Investors filed *Weatherly*, the first of these cases, on November 20, 2013, and the other five cases between January 28, 2015, and February 2, 2015—all in the Southern District of Florida. The cases were transferred to the Northern District of Texas, home of the Stanford multidistrict litigation.

The Investors assert two claims against Pershing. First, they allege that Pershing committed indirect fraud under Florida law.[3] Second, they allege Pershing aided and abetted Stanford's breaches of fiduciary duty under Florida law.[4] A four-year statute of limitations applies to both claims.[5]

---

[3] Under this theory, the Investors allege that Pershing made misleading statements to financial advisors, who repeated them to Plaintiffs.

[4] Under this theory, the Investors allege that Pershing knew that Stanford brokers were breaching fiduciary duties to investors, and Pershing disregarded suspicious information and continued to accept orders from Stanford brokers.

[5] FLA. STAT. § 95.11(3)(j), (o).

5

No. 18-11052

Pershing moved for summary judgment. It argued that all claims were barred by limitations and that the Investors lacked evidence to establish elements on each claim. The district court granted the motion based on the limitations defense. It assumed the Investors should have known of their claims, at the latest, by November 18, 2009, when the *Turk* class action was filed. Because the Investors filed the first of these cases on November 20, 2013—four years and two days later—these cases were untimely. The district court rejected the argument that the limitations period tolled while the Investors were putative members of the *Turk* class. It did not address Pershing's merits-based arguments.

## II

The standards governing this appeal are well settled.

*First*, the standard of review. We review "grant of summary judgment *de novo*, applying the same standard on appeal that is applied by the district court."[6]

*Second*, the summary-judgment standard. Under Rule 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] We review "a district court's determinations of state law *de novo*."[8]

## III

Without tolling, all six cases were indisputably filed late. The Investors claim that Florida law and federal law support tolling during putative class actions. Pershing says, "no" on both counts. Pershing also contends that not

---

[6] *Ocwen Loan Servicing, L.L.C. v. Berry*, 852 F.3d 469, 471 (5th Cir. 2017) (quoting *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014)) (ellipsis omitted).

[7] FED. R. CIV. P. 56.

[8] *Ocwen*, 852 F.3d at 472 (quoting *Lozovyy v. Kurtz*, 813 F.3d 576, 580 (5th Cir. 2015)).

No. 18-11052

only do the Investors lose under the statute of limitations, but summary judgment is warranted on the merits. We find that neither Florida nor federal law offer the Investors tolling relief, so we decline to reach the merits.

A

We begin our discussion with Florida law. Because the Investors filed these cases in federal court in Florida, we apply Florida substantive law to the question of whether the Investors' presence in the *Turk* lawsuit tolled the statute of limitations for their claims in this case.[9] The Florida Supreme Court has not decided whether a statute of limitations is tolled during a putative class action. So we must make "an *Erie* guess as to what the [Florida] Supreme Court would most likely decide."[10] We base our guess, "[a]s a practical matter," on:

> (1) decisions of the state supreme court in analogous cases, (2) the rationales and analyses underlying state supreme court decisions on related issues, (3) dicta by the state supreme court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which state courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.[11]

When making an *Erie* guess, we do not "adopt innovative theories of state law" but aim simply "to apply that law as it currently exists."[12] And we "are

---

[9] The multidistrict litigation transfer to Texas does not change the choice of law. 15 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3867 (4th ed. 2019) (""[T]here is no doubt that in diversity of citizenship cases, the MDL transferee court must apply the substantive law . . . that would have been applied in the transferor forum.").

[10] *Hermann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002).

[11] *In re DePuy Orthopedics, Inc.*, 888 F.3d 753, 765 n.5 (5th Cir. 2018) (brackets omitted) (quoting *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998)).

[12] *Id.* (quoting *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir. 1986) (en banc)).

emphatically not permitted to do merely what we think best; we must do that which we think the state supreme court would deem best."[13]

Here, a statute governs the question before us. And when a statute controls, our first stop (and usually our last) is the statutory text. "Text is the alpha and omega of the interpretive process."[14] Our precedent demands "unswerving fidelity to statutory language,"[15] meaning we take lawmakers at their word and presume they meant what they said.[16]

Florida law happens to provide a statutory list of grounds for tolling its statutes of limitations. As the district court recognized, and as all parties agree, putative class actions are not on the list. In Florida, statutes of limitations are tolled by:

> (a) Absence from the state of the person to be sued.
> (b) Use by the person to be sued of a false name . . . .
> (c) Concealment in the state of the person to be sued so that process cannot be served on him or her.
> (d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. . . .
> (e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments.
> (f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.
> (g) The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action.
> (h) The period of an intervening bankruptcy . . . .
> (i) The minority or previously adjudicated incapacity of the person entitled to sue . . . .[17]

---

[13] *Id.* (brackets omitted).

[14] *United States v. Maturino*, 887 F.3d 716, 723 (5th 2018).

[15] *Reed v. Taylor*, 923 F.3d 411, 415 (5th Cir. 2019).

[16] *Id.*

[17] FLA. STAT. § 95.051(1).

No. 18-11052

Importantly, the statute itself, in the very next subpart, declares that the above list is exclusive—explicitly disclaiming any other grounds for tolling: "A disability or other reason does not toll the running of any statute of limitations except those specified in this section, s. 95.091 [tax actions], the Florida Probate Code, or the Florida Guardianship Law."[18] The Florida Supreme Court generally takes a straightforward view of § 95.051(2)'s exclusivity provision. The State's high court has held that "the tolling statute specifically precludes application of any tolling provision not specifically provided therein."[19] And the tolling statute "delineates an *exclusive* list of conditions that can 'toll' the running of the statute of limitations."[20]

Despite the clear language of § 95.051 and the Florida Supreme Court's insistence that all other tolling provisions are excluded, the Investors contend that two Florida Supreme Court cases—*Lance v. Wade*[21] and *Engle v. Liggett Group, Inc.*[22]—have essentially added class actions to the statutory list. The Investors argue that *Lance* and *Engle* stand for the proposition that, in Florida, "class members are entitled to tolling while a putative class action is pending."[23] But the Florida Supreme Court did not actually announce this rule in either case, and we are not inclined to find innovative theories of state law while making an *Erie* guess.

---

[18] *Id.* § 95.051(2).

[19] *Hearndon v. Graham*, 767 So. 2d 1179, 1185 (Fla. 2000).

[20] *Major League Baseball v. Morsani,* 790 So. 2d 1071, 1075 (Fla. 2001) (emphasis added).

[21] 457 So. 2d 1008 (Fla. 1984).

[22] 945 So. 2d 1246 (Fla. 2006).

[23] Brief for Appellant at 16, *Weatherly v. Pershing*, No. 18-11052 (5th Cir. filed Feb. 11, 2019).

No. 18-11052

In *Lance*, the court reversed a plaintiff class's judgment—decertifying the class—because Florida law did not recognize class actions based on fraud on individual contracts.[24] But the court granted the decertified class members a measure of relief from the harsh result of decertification:

> We find that the members of this class, having apparently relied on this cause of action, should be entitled to proceed individually without prejudice against the sellers for breach of contract, fraud, specific performance, or rescission. *Given the circumstances of this action*, we find that the purchasers should not be subject to the defenses of the statute of limitations or laches, providing that their actions are commenced within a reasonable time after the remand of this decision.[25]

The passage above is the last full paragraph of the opinion and is introduced with the phrase: "We find that the members of *this class* . . ."[26] The language the Investors rely on is in the last substantive sentence of the opinion and begins with: "Given the circumstances of *this action*."[27] If the Florida Supreme Court wanted to introduce into Florida law, in plain contravention of a Florida statute, that all future putative class action claimants are entitled to tolling, this was an odd way to do it. The more logical read is that the court simply provided equitable relief from a limitations defense because the decertified class members relied on the faulty cause of action. And that reliance arose because the lower court allowed the class action to proceed to a jury verdict. The Florida Supreme Court thus allowed a "reasonable time" for class members to refile individually. The *Lance* court provided a narrow exception for an exceptional circumstance, not a rule of general applicability.

---

[24] 457 So. 2d 1008, 1011 (Fla. 1984).

[25] *Id.* (emphasis added).

[26] *Id.* (emphasis added).

[27] *Id.* (emphasis added).

No. 18-11052

The Investors' other Florida Supreme Court case is *Engle v. Liggett Group, Inc.* In *Engle*, the court reversed in part the trial court's decision that a tobacco case would proceed as a class action in three phases: (1) liability and punitive damages; (2) aggregate compensatory damages; and (3) individual compensatory damages.[28] After the first and second phases, the Florida Supreme Court held that "continued class action treatment is not feasible and that upon remand the class must be decertified."[29] But the court made it easier for individual class members to proceed with their claims:

> Individual plaintiffs within the class will be permitted to proceed individually with the findings set forth above given res judicata effect in any subsequent trial between individual class members and the defendants, provided such action is filed within one year of the mandate in this case.[30]

*Engle* was even more peculiar than *Lance*.[31] The Florida Supreme Court later explained in an *Engle*-progeny case that the *Engle* court "did not decertify the class in a traditional sense."[32] Rather, the court "conferred upon the class members two benefits:" (1) equitable tolling for one year, and (2) res judicata effect of Phase One's common core findings.[33] So the court saw itself as *conferring* an equitable *benefit* on the *Engle* class members, not developing a generally applicable tolling doctrine for all future class actions.

Unlike the case before us, both *Lance* and *Engle* involved certified classes that were later decertified on appeal. And plaintiffs in both cases had already

---

[28] 945 So. 2d 1246, 1276–77 (Fla. 2006).

[29] *Id.* at 77.

[30] *Id.*

[31] Interestingly, the *Engle* majority did not cite *Lance.* But one dissenting Justice did in a footnote: "I believe that this procedure would confirm with what this Court allowed in *Lance v. Wade . . . .*" *Id.* at 1282 n.15 (Wells, J., concurring in part and dissenting in part).

[32] *R.J. Reynolds Tobacco Co. v. Ciccone*, 190 So. 3d 1028, 1037 (Fla. 2016).

[33] *Id.*

11

tried their cases to favorable jury verdicts. The Florida Supreme Court did not cite Florida's tolling statute or even use the word "toll" in either case. That silence is not dispositive. But it is curious. If the court was creating a new tolling rule applicable to all future putative class actions, why not use the word "toll"?

Pershing argues that in these two cases, the Florida Supreme Court applied a "savings" period—not a tolling rule—to the claims of decertified class members. We find this argument unconvincing.[34] But there is no reason to parse the distinctions between a tolling rule and a savings period. We may not expand Florida law to bring it clarity. And we need not because one thing *is* clear: Neither *Lance* nor *Engle* announced a broadly applicable rule that putative class action claimants are entitled to tolling. The Florida Supreme Court's holding in each case appears, in the plain language of each opinion, to tailor the relief dispensed to the equitable needs of the *particular* plaintiffs. And nothing more. Nothing in *Engle* or *Lance* suggests that the Florida Supreme Court would depart from the plain language of § 95.051 when dealing with Plaintiffs here—who were never certified as a class by a lower court and never tried their case to a favorable jury verdict in reliance on a court's class certification.

But that doesn't settle our question of tolling under Florida law. When making an *Erie* guess, if the state supreme court has not spoken, we defer to

---

[34] Pershing's authorities do not lend much support to this distinction. *See Universal Eng'g Corp. v. Perez*, 451 So. 2d 463, 467 (Fla. 1984) (discussing enacted savings clauses in some Florida statutes). But an on-point law review note concludes that Florida does not recognize class tolling and recommends that the legislature remedy this with a "savings statute." Laura Liles, Note, *For Whom the Statute Tolls? Not Even the Sacred Heart: Florida Class Action Jurisdiction and the Need for a Savings Statute to Toll the Limitations Period*, 69 FLA. L. REV. 989 (2017).

intermediate state appellate courts that have addressed the issue, unless we are "convinced by other persuasive data that the highest court of the state would decide otherwise."[35] The Investors offer several Florida intermediate state court decisions that they contend recognize class action tolling as a general principle of Florida law. But most of the cases the Investors cite are *Engle*-progeny cases, in which intermediate courts are grappling with, among other things, whether plaintiffs qualify as *Engle* class members.[36] These cases don't shed light on the application of *Engle* to all other class action claimants. They merely stand for the unremarkable proposition that lower courts followed the Florida Supreme Court's instructions for dealing with those who qualify as *Engle* class members.

But the Investors do cite two non-*Engle*-progeny intermediate state court decisions: *Latman v. Costa Cruise Lines N.V.*[37] and *Browning v. Angelfish Swim School, Inc.*[38] *Latman* is hardly on point because the limitations provision that was "tolled" was simply a contractual provision on the back of a

---

[35] *Herrman Holdings*, 302 F.3d at 558 (quoting *First Nat'l Bank v. Trans Terra Corp.*, 142 F.3d 802, 809 (5th Cir. 1998)).

[36] *See e.g., R.J. Reynolds Tobacco Co. v. Sheffield*, 266 So. 3d 1230 (Fla. 5th Dist. Ct. App. 2019); *Phillip Morris USA, Inc. v. Hallgren*, 124 So. 3d 350 (Fla. 2d Dist. Ct. App. 2013); *Soffer v. R.J. Reynolds Tobacco Co.*, 106 So. 3d 456 (Fla. 1st Dist. Ct. App. 2012); *Gaff v. R.J. Reynolds Tobacco Co.*, 129 So. 3d 1142 (Fla. 1st Dist. Ct. App. 2013). *Gaff* is probably the Investors' strongest *Engle*-progeny case. There, the court explained: "For the purposes of this decision, we assume the filing of the *Engle* class action complaint tolled the running of the statute of limitations as to all potential members of the class . . . ." *Id.* at 1145. This language gives credence to the Investors' position because (1) it indicates that tolling was triggered by the filing of the complaint, and (2) the court cites *American Pipe & Construction Co. v. Utah* as support (*American Pipe* established the federal policy of tolling for class actions. 414 U.S. 538, 554 (1974)). But *Gaff* is not dispositive for two reasons: (1) the court doesn't explicitly say that non-*Engle* putative class action claimants are entitled to tolling, and (2) the above language is dicta because the court found that the plaintiff's claim was untimely. The court's *assumption* that the complaint triggered tolling was thus irrelevant to its holding.

[37] 758 So. 2d 699 (Fla. 3d Dist. Ct. App. 2000).

[38] 1 So. 3d 355 (Fla. 3d Dist. Ct. App. 2009).

cruise ticket—not a statute—let alone a Florida tolling statute with specific exclusions.[39] For their authority in *Browning,* the Investors cite a footnote in a dissent. There, the dissenting judge claimed that "the statute of limitations is typically tolled for asserted class members who later file actions of their own from the time a class complaint is filed to the time certification is denied."[40] The judge appears to be taking the Investors' view of Florida law. But one dissenting judge in a footnote is not exactly overwhelming evidence of a broadly applicable tolling rule, especially considering that tolling was not even an issue in *Browning.*[41] In short, this statement was dicta in a footnote of a dissent—completely irrelevant to the issue that was before the court. If that is the best the Investors have to offer, they're on shaky ground.

So with underwhelming evidence that Florida's intermediate courts apply tolling for putative class actions, we look to other pieces of "persuasive data" for what the Florida Supreme Court would do. The first and best piece of data is the tolling statute itself, which we have already discussed. But we also look to other courts. And we are not the first federal court to consider this question. The Second Circuit, the D.C. Circuit, and one federal district court in Florida have held unequivocally that Florida does not recognize class action tolling.[42] One federal appellate court, the Eleventh Circuit, appears to differ,

---

[39] *Latman*, 758 So. 2d at 704.

[40] *Browning*, 1 So. 3d at 362 n.12 (Shepherd, J., concurring in part and dissenting in part).

[41] The dissenting judge only mentioned tolling in a footnote to counter his warning about the dangers of litigants resting on their claims. *Id.* at 362.

[42] *Becnel v. Deutsche Bank, AG*, 507 F. App'x 71, 73 (2d Cir. 2013) ("Florida does not allow tolling during the pendency of class action lawsuits no matter where they are filed.") (citing FLA. STAT. § 95.051); *Adams v. Deutsche Bank AG*, 529 F. App'x 98, 100 (2d Cir. 2013) (same); *In re Vitamins Antitrust Litig.*, 183 F. App'x 1, 1 (D.C. Cir. 2006) (citing FLA. STAT. § 95.051) ("The Florida legislature has enumerated eight scenarios in which the applicable statute of limitations is tolled, and a pending class action is not one of them."); *Senger Bros. Nursery v. E.l. Dupont de Nemours & Co.*, 184 F.R.D. 674, 680–82 (M.D. Fla. 1999) (olding

No. 18-11052

but its provocative statement is not actually a holding. In *Raie v. Cheminova, Inc.*, the Eleventh Circuit observed: "There is no dispute that *American Pipe*['s federal policy of tolling for class actions] has been followed in Florida state courts."[43] But that proposition was not part of the holding in *Raie*. The court ultimately rejected tolling because the plaintiff was not a member of the class he relied on.[44] So the weight of federal appellate authority is that Florida law does not recognize class action tolling.

In sum, it is far from clear that Florida law recognizes class action tolling, and, as an *Erie* court, we decline to announce such a rule before the Florida Supreme Court has done so. We find that under Florida law, class action claimants are not entitled to tolling.[45] The Investors, however, do not rest their claims entirely on Florida law.

B

The Investors contend that even if Florida law rejects class action tolling, federal law should govern. They have an uphill battle. Under *American Pipe & Construction Co. v. Utah*, federal law does toll limitations during a putative class action.[46] In a diversity case, we apply federal procedural rules and state substantive law.[47] It's not always terribly clear what counts as substance and

that tolling of Florida's statutes of limitations "is permitted in precise situations set out within Florida Statute § 95.051" and that class action claimants are not entitled to tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974)).

[43] 336 F.3d 1278, 1282 (11th Cir. 2003).

[44] *Id.* at 1283.

[45] Pershing argues that even if Florida law recognized class action tolling, the Investors would not be able to benefit because Florida law does not recognize cross-jurisdictional tolling (e.g., the *Turk* suit was filed outside of Florida's courts). **Red Br. at 29.** Because we find that Florida law doesn't recognize class action tolling, we don't take up this argument.

[46] 414 U.S. 538, 554 (1974).

[47] *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

15

what counts as procedure.[48] But we have already answered the question before us: whether to apply *American Pipe* tolling or state tolling rules.[49] In *Vaught v. Showa Denko K.K.*, we found that "the Supreme Court has stated that generally, for diversity actions, a federal court should apply not only state statutes of limitation but also any accompanying tolling rules."[50] In *Vaught*, the best authority available to the plaintiffs for applying *American Pipe* tolling was *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*[51] The same is true here for the Investors.

In *Byrd*, the issue was whether, in a diversity case, the judge or the jury should decide the question of an employer's immunity under a state workers' compensation law.[52] The Supreme Court held that the federal rule should govern because the state rule was not "an integral part of the special relationship created by the statute."[53] Rather, the state rule was "merely a

---

[48] *Erie R. Co. v. Tompkins*, 304 U.S. 64, 92 (1938) (Reed, J., concurring) ("The line between procedural and substantive law is hazy . . . ."); *see also* ERWIN CHEMERINKSKY, FEDERAL JURISDICTION 365 (7th ed. 2016) ("The problem is that distinctions between substance and procedure are inherently ephemeral and thus difficult to draw.").

[49] *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1143 (5th Cir. 1997).

[50] *Id.* at 1145 (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750–53 (1980)).

[51] *Id.*

[52] 356 U.S. 525 (1958).

[53] *Id.* at 535. An *Erie* analysis would typically entail two antecedent questions before getting to the federal-interest question articulated in *Byrd*. But we focus our attention on the *Byrd* balancing test because that was where the battle was fought in *Vaught* and because that is where the parties disagree here. The Investors don't mount an argument under the first *Erie* question, and they breeze past the second in a footnote. The Investors' main argument—and only plausible argument under *Erie*—is that an application of *Bryd* yields a different result here than it did in *Vaught*. So that is where we direct our analysis.

But even if the parties' arguments had implicated each step of the *Erie* inquiry, the outcome would be no different. The first question under *Erie* is "whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the Court." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50 (1980). The federal rule must be applied "if it represents a valid exercise of Congress' rulemaking authority, which originates in the Constitution and has been bestowed on [the Supreme] Court by the Rules Enabling Act."

form and mode of enforcing the immunity and not a rule intended to be bound up with the definition of the rights and obligations of the parties."[54] But the federal policy of having juries decide disputed fact questions was an "essential characteristic" of federal law, "under the influence—if not the command—of the Seventh Amendment."[55]

In *Vaught*, we applied *Byrd* and found that the federal interest in class action tolling was "strong." But that interest did "not trump the Texas tolling rule."[56] Unlike the conflicting laws in *Byrd*, ignoring the federal rule on tolling would not displace the U.S. Constitution or federal law.[57] So without federal law or a federal rule of civil procedure, the federal government's interest in tolling would not overpower a strong state interest.[58] And Texas's interest had "quite considerable depth" because "a tolling rule is an integral part of a statute of limitations."[59]

The federal interest in *American Pipe* tolling is the same here as it was in *Vaught*, so the Investors' only argument is that Florida's interest in its

---

*Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 5 (1987). Here, the federal rule is not broad enough because there is no relevant federal rule. The Supreme Court recently held that the *American Pipe* tolling rule was not mandated by the text of a federal statute or rule. *Cal. Pub. Emps. Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2051–52 (2017). The second *Erie* question is whether the choice between the state and federal rule would "determine the outcome of a litigation." *Guarantee Trust Co. v. York*, 326 U.S. 99, 109 (1945). If applying state law would likely determine the outcome, the state law must be applied. This inquiry must be guided by the "twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws. *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 428 (1996) (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)). Both aims clearly counsel in favor of applying Florida's tolling rule.

[54] *Id.* at 536.

[55] *Id.* at 537.

[56] *Vaught*, 107 F.3d at 1147

[57] *Id.*

[58] *Id.*

[59] *Id.* (internal quotation marks omitted).

tolling rule is weaker than Texas's. And indeed, that is their argument. They contend that Florida's interest is "nonexistent" because (1) "all the state courts in Florida have concluded that there *is* class action tolling"[60] and (2) Florida's legislature has never "said anything in derogation of class action tolling."[61] If the Investors' first point were correct, we wouldn't be discussing federal law because Florida law would simply govern. And to their second point: The Florida Legislature *did speak* by enacting § 95.051. If tolling were a matter of trivial concern, the legislators would not have troubled themselves with writing a law. We can infer from the statute itself that Florida has expressed a strong interest in how its statutes of limitations are, or are not, tolled.

And this inference follows directly from our holding in *Vaught*. We found that Texas's interest in its tolling rule was deep precisely because a tolling rule is a means of enforcing a statute of limitations—"a matter of considerable importance to Texas, one reflecting a deliberate policy choice by its legislature."[62] We are bound to follow *Vaught*,[63] and there is no sound reason why Florida's statute of limitations should fair more poorly than Texas's.

Plus, the U.S. Supreme Court has made clear that *American Pipe* is not meant to displace statutes. In *American Pipe*, the Court held that its court-made rule would only function "under certain circumstances not inconsistent with the legislative purpose."[64] And in *California Public Employees' Retirement*

---

[60] Brief for Appellant at 37, *Weatherly v. Pershing*, No. 18-11052 (5th Cir. filed Feb. 11, 2019).

[61] *Id.*

[62] *Vaught*, 107 F.3d at 1147.

[63] *Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) ("Under our rule of orderliness, 'one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court.'") (quoting *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)).

[64] *American Pipe*, 414 U.S. at 559.

No. 18-11052

*System v. ANZ Securities, Inc.*, the Court clarified that because *American Pipe* derived from equity principles, it could not alter the unconditional language and purpose of a statute of repose.[65] A statute of repose is designed to "grant complete peace to defendants" and thus "supersedes the application of a tolling rule based in equity."[66] Federal law is unavailing to the Investors because the only federal rule they can point to is one grounded in the "traditional equitable powers of the judiciary."[67] But equity does not empower judges to contravene the plain language of a statute.[68] When interpreting statutes, our task is to be neither generous nor parsimonious, but faithful to what the words actually say.

C

The Investors argue that if Florida law doesn't recognize class action tolling and if federal law is unavailing, they are still entitled to approximately eight months of "equitable tolling" for a period when *Turk* was stayed. The district court stayed *Turk* from September 2011 to May 2012 while an appeal from another case was appealed to us.[69] The issue on appeal was whether the federal Securities Litigation Uniform Standards Act of 1998 barred some state-law claims in the Stanford litigation.[70] The *Turk* district court believed SLUSA barred most of the *Turk* class's claims, so it stayed the case pending appellate

---

[65] 137 S. Ct. 2042, 2051–52 (2017).

[66] *Id.* at 2052.

[67] *Id.*

[68] The Investors also argue that it might be unconstitutional for Florida *not* to recognize class action tolling. Under Federal Rule of Civil Procedure 23, some class actions do not permit any plaintiffs to opt out. So the Investors contend that the lack of tolling might deprive them of a claim without due process. But the *Turk* class action was filed under Rule 23(b)(3), which permits opt-outs. So the due process issue is not presented for decision here.

[69] *See* Order, *Turk v. Pershing, LLC*, No. 9-02199 (N.D. Tex. May 21, 2012), ECF No. 73; Order, *Turk v. Pershing, LLC*, No. 9-02199 (N.D. Tex. Sept. 30, 2011), ECF No. 69.

[70] *Roland v. Green*, 675 F.3d 503, 504–07 (2012).

19

review. In *Roland*, we reversed the district court on that issue,[71] which allowed *Turk* to proceed.

The Investors contend that the district court's stay of *Turk* provides relief because under *Machules v. Department of Administration*, Florida law provides for equitable tolling.[72] And the Investors maintain that adverse binding precedent makes a claim futile and entitles a plaintiff to equitable tolling from a statute of limitations.[73]

We disagree.

First, tolling due to a stay is not on the exclusive list in § 95.051.[74] Second, the Investors' state-court authority, *Machules*, is distinguishable because it tolled an administrative rule—not a statute of limitations.[75] Third, an adverse district court decision on appeal is not the kind of event that invokes equitable tolling. This was not a situation where a plaintiff "ha[d] been misled or lulled into inaction, ha[d] in some extraordinary way been prevented from asserting his rights, or ha[d] timely asserted his rights mistakenly in the wrong forum."[76] Plus, even if adverse binding precedent could invoke equitable tolling, district court decisions are not binding precedent, even in the same

---

[71] *Id.* at 506–07.

[72] *See* 523 So. 2d 1132, 1134 (Fla. 1988) (equitably tolling limitations where plaintiff's employer lulled him into inaction).

[73] *Cf. Menominee Indian Tribe v. United States*, 136 S. Ct. 750, 757 (2016) (acknowledging the possibility that "actually binding precedent that is subsequently reversed" could support equitable tolling).

[74] FLA. STAT. § 95.051

[75] *Machules*, 523 So. 2d at 1133.

[76] *Id.* at 1134.

No. 18-11052

district court.[77] For all these reasons, equitable tolling is not available to the Investors.

## IV

Our constitutional design confers on the judiciary the power to adjudicate, but not to legislate. Florida law dictates today's outcome, and we cannot supplant our wisdom for that of the legislature.

The Investors claims are time-barred by the state statute of limitations. Because Florida law does not recognize putative class actions in § 95.051's exclusive list of tolling exceptions and because *American Pipe* is unavailing, we decline to reach the merits of the Investors' claims.

We AFFIRM the judgment of district court.

---

[77] Joseph W. Mead, *Stare Decisis in the Inferior Courts of the United States*, 12 NEV. L.J. 787, 800–02 (2012).

21