# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2025

Lyle W. Cayce
Clerk

———————

No. 24-60647

———————

Retro Metro, LLC; Leroy Walker, *Individually and as partner of Retro Metro, LLC*; Socrates Garrett, *Individually and as partner of Retro Metro, LLC*; Howard Catchings, *Individually and as partner of Retro Metro, LLC*,

*Plaintiffs—Appellants*,

*versus*

City of Jackson, *by and through its City Council*; Mayor Chokwe Antar Lumumba, *Individually and in his Official Capacity*; Vernon Hartley, *Individually and in his Official Capacity*; Brian Grizzell, *Individually and in his Official Capacity*; Virgi Lindsay, *Individually and in his Official Capacity*; John Does #I-V,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:23-CV-592

———————————————————

Before Elrod, *Chief Judge*, and Duncan and Engelhardt, *Circuit Judges*.

Kurt D. Engelhardt, *Circuit Judge*:

The City of Jackson leased a commercial property from the appellants. At issue is whether that lease is a valid contract given Mississippi's "minutes

rule," which provides that public boards only speak through their meeting minutes. The district court held that the lease is not valid because it was not recorded in the city council's meeting minutes, and that it cannot be enforced through judicial estoppel or waiver. We AFFIRM.

## I.

Appellant Retro Metro, LLC owns the commercial property in Jackson, Mississippi that was formerly the Metro Center Mall. The Jackson City Council's meeting minutes reflect that on January 11, 2011, the City Council authorized the mayor "to execute a non-binding Memorandum of Understanding with Retro Metro, LLC for the lease of office space in the former Belk's Department Store building at the Metro Center Mall." The following month, as recorded in the February 8, 2011 meeting minutes, the City Council authorized the mayor to lease part of the property:

> NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Jackson that the Mayor is authorized to negotiate and execute a lease with Retro Metro LLC for the lease of 60,000 square feet in the former Belk's Department Store building at the Metro Center Mall for an amount not to exceed $487,000 annually for a term not to exceed 20 years and to sign any and all instruments necessary to effectuate said lease.

After the February 2011 meeting, the City Council's minutes are silent on this property and any such lease for over twelve years. But according to Retro Metro and a 44-page lease agreement, the City leased the property on April 4, 2011, under the terms authorized by the City Council. In accordance with the written lease, the City took occupation of the property.

Since then, the lease has been the subject of at least three lawsuits between the City and Retro Metro. In 2016, Retro Metro sued the City in Hinds County Chancery Court for breach of contract. In its answer to that

lawsuit, the City admitted that "it entered into a lease with [Retro Metro] in April 2011." The parties ultimately settled the litigation.

In June 2023, Retro Metro again sued the City in Hinds County Chancery Court, this time seeking specific performance of the lease. The City again admitted in its answer that it "entered a Lease with [Retro Metro] on said date for the purpose of maintaining City offices in the building." The City also asserted a counterclaim against Retro Metro for breach of contract.

Shortly thereafter, on July 18, 2023, the City Council authorized the mayor to terminate the lease and vacate the premises. This prompted Retro Metro and its owners, Leroy Walker, Socrates Garrett, and Howard Catchings (collectively, "Retro Metro") to file this lawsuit against the City, the mayor, and three City Council members in the United States District Court for the Southern District of Mississippi. Retro Metro alleged violations of substantive and procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution, breach of contract, and racial discrimination in violation of Title VII of the Civil Rights Act of 1964.[1] The district court granted summary judgment for the City and dismissed all claims against the individual defendants. Retro Metro timely appealed. On appeal, Retro Metro only challenges the district court's summary judgment ruling on its breach of contract claim against the City.

## II.

We review the grant of summary judgment *de novo*, applying the same standard as the district court. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). A court "shall grant summary judgment if the movant shows

---

[1] The racial discrimination claims alleged that the City terminated the lease because the owners of Retro Metro are African American.

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

## A.

Under Mississippi law, "public boards speak only through their minutes" and "their acts are evidenced solely by entries on their minutes." *KPMG, LLP v. Singing River Health Sys.*, 283 So. 3d 662, 669 (Miss. 2018). So "where a public board engages in business with another entity, 'no contract can be implied or presumed, it must be stated in express terms and recorded on the official minutes.'" *Wellness, Inc. v. Pearl River Cnty. Hosp.*, 178 So. 3d 1287, 1291 (Miss. 2015) (quoting *Burt v. Calhoun*, 231 So. 2d 496, 499 (Miss. 1970)) (alterations adopted). If a contract is not properly recorded on the board's minutes, it is unenforceable. *Singing River MOB, LLC v. Jackson County*, 342 So. 3d 140, 147 (Miss. 2021). All parties who contract with public boards in Mississippi are "chargeable with knowledge of this law," *Colle Towing Co. v. Harrison County*, 57 So. 2d 171, 172 (Miss. 1952), and are responsible for "see[ing] that the contract is legal and properly recorded on the minutes of the board," *Thompson v. Jones Cnty. Cmty. Hosp.*, 352 So. 2d 795, 797 (Miss. 1977).

This so-called "minutes rule" does not require that an entire contract be placed on the minutes. *Singing River MOB*, 342 So. 3d at 147. Rather "a contract with a public board may be enforced if enough of the terms and conditions of the contract are contained in the minutes for determination of the liabilities and obligations of the contracting parties without the necessity of resorting to other evidence." *Thompson*, 352 So. 2d at 797.

No. 24-60647

B.

Retro Metro's first argument is that the district court erred by finding that the lease did not satisfy the minutes rule and therefore was not a valid contract. The parties agree that the minutes rule applies but disagree on whether it was satisfied. We agree with the district court and the City that it was not.

From reviewing the minutes, the public only knows that the City Council (1) authorized the mayor to lease the property, subject to certain limitations, and (2) more than 12 years later, sought to terminate that lease. Even though the written lease mirrored the approved limitations, one cannot determine the liabilities and obligations of the parties by reviewing the minutes. *See id.*

*Singing River MOB* requires this conclusion. There, the Mississippi Supreme Court had to determine whether a property lease satisfied the minutes rule. *Singing River MOB*, 342 So. 3d at 149–50. Only two minute entries addressed the lease. *Id.* at 150. In the first meeting, the board reviewed plans for a medical office that it was considering building on its property. *Id.* at 143, 150 & n.10. The minutes recorded that under that plan, the government entity would lease its land to a private party, and outlined the financials for the ground lease:

> Ground lease will be based on fair market value (FMV) of property. Square footage quantity will be equal to the footprint of the building (estimated at 35,000 square feet). Ground lease payments will not be less than $14,000 per year (based on value of $300,000 per acre and 6% return). A 3% annual escalator will be applied.

*Id.* at 150. This ground lease is discussed in one other minutes entry, about nine months later. *Id.* This second entry "only indicate[d]" that the board authorized the government entity's CEO "to execute the necessary

5

documents to consummate" the ground lease. *Id.* Although not recorded on the minutes, the parties executed the lease and operated in accordance with it for nearly a decade until litigation ensued. *Id.* at 145.

The *Singing River MOB* ground lease ultimately did not satisfy the minutes rule because, from the board's minutes, "neither the Board nor the public [could] calculate the exact payment [the private party] must make to [the government entity], and, thus, the public [could not] 'see what was actually done.'" *Id.* at 151 (quoting *KPMG*, 283 So. 3d at 673). The court added: "The term 'fair market value' is subjective, and the public [was] given no guidance on how it was to be determined. Facially, this term cannot even provide the public a rough estimate of what [the private party] would pay [the government entity]." *Id.*

The same is true here. Even if the public could surmise from the minutes that a lease existed, neither the public nor the City Council could determine the parties' obligations. At best, the minutes reflect that the City may have an obligation to pay up to $487,000 a year for 20 years. This is even less information than the *Singing River MOB* minutes contained. There, the minutes provided not only an outer boundary for the lease rate—as the minutes do here—but also a basis for calculating the rate: fair market value. *See id.* at 150. Yet the minutes rule was still not satisfied. *Id.* The minutes here are likewise insufficient to establish a valid contract.

## IV.

Retro Metro next maintains that even if the minutes rule was not satisfied, judicial estoppel bars the City from denying that the lease is valid because that is inconsistent with the City's position in previous litigation. The City responds that judicial estoppel cannot override the minutes rule.

No. 24-60647

A.

Both Mississippi and federal law recognize judicial estoppel. We must first determine which to apply here.[2]

When adjudicating state law claims, we apply state substantive law and federal procedural law. *Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995). The line between procedural and substantive law can be "hazy." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 92 (1938). To determine which side of the line an issue falls on, we "consider the 'twin aims' of *Erie:* the discouragement of forum shopping and the avoidance of the inequitable administration of the laws." *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 395 (5th Cir. 2003) (quoting *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991)).

Regarding judicial estoppel, we have recognized that "many courts have simply assumed that either federal or state law applies and therefore have applied either federal or state law without analysis." *Id.* But "the majority of cases to consider the question have concluded that federal law should apply because a federal court should have the ability 'to protect itself from manipulation' and this ability should not vary in a diversity action because it is a matter of federal procedure and not a substantive concern." *Id.* (collecting cases). We too "generally" consider judicial estoppel "a matter of federal procedure." *Id.* But not always.

We apply state judicial estoppel when "nonfederal issues are at stake." *Cont'l Cas. Co. v. McAllen Indep. Sch. Dist.*, 850 F.2d 1044, 1046 n.2 (5th Cir. 1988) (citing *City of Miami Beach v. Smith*, 551 F.2d 1370, 1377 n.12

---

[2] Neither party acknowledges this issue. Retro Metro cites federal and state law interchangeably. The City cites federal law, yet argues that it cannot override state law regarding the minutes rule.

(5th Cir. 1977)). Distinctly nonfederal issues are *not* at stake, for example, if (1) the application of federal judicial estoppel is not outcome determinative—and therefore does not encourage forum shopping—and (2) all relevant lawsuits were in federal court, making it "the federal court that is subject to manipulation and in need of protection." *See Hall*, 327 F.3d at 395–96.

Distinctly nonfederal issues *are* at stake here. First, the City argues—and we agree, *see infra* Section IV.B.—that substantive Mississippi law does not permit judicial estoppel to override the minutes rule. Applying judicial estoppel as a matter of federal procedure could therefore enable the enforcement of a contract in federal court that could never be enforced in state court. Second, the other lawsuits between these parties occurred entirely in state court. And third, this is a dispute between two Mississippi parties regarding a state law claim. It is only subject to federal jurisdiction because Retro Metro initially also pursued related federal claims. *See City of Miami Beach*, 551 F.2d at 1377 n.12 ("The issues here are distinctly nonfederal, with federal jurisdiction being founded rather accidentally on the presence of the United States as a wholly quiescent defendant."). Under these circumstances, the risks of inequitably administering justice and encouraging forum shopping are much greater than the risk that the federal court will be manipulated. We therefore apply Mississippi judicial estoppel.

## B.

Judicial estoppel applies "in civil cases where there is multiple litigation between the same parties and one party knowingly asserts a position inconsistent with [its] position in the prior litigation." *In re Mun. Boundaries of Southaven*, 864 So. 2d 912, 919 (Miss. 2003) (quoting *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 264–65 (Miss. 1999)) (alterations adopted and quotation marks omitted). It has three elements: (1) "an asserted legal position inconsistent with one previously taken during litigation"; (2) "a

court's acceptance of that previous position"; and (3) "no inadvertence in taking the inconsistent position." *Saunders v. Nat'l Collegiate Athletic Ass'n*, 352 So. 3d 618, 624 (Miss. 2022).

As the district court and both parties have recognized, the Mississippi Supreme Court has not expressly addressed the interplay between the minutes rule and judicial estoppel.[3] It has, however, articulated that estoppel generally cannot cure a failure to comply with the minutes rule: "[A] public board may not be bound by estoppel unless the agreement at issue is duly and lawfully entered upon its minutes." *KPMG*, 283 So. 3d at 676 (citing *Butler v. Bd. of Supervisors for Hinds Cnty.*, 659 So. 2d 578, 582 (Miss. 1995) (quoting *Colle Towing Co.*, 57 So. 2d at 172)). The court made this statement when rejecting an assertion of direct-benefit estoppel, *see id.* at 675–76, but cited caselaw rejecting a claim brought in quantum meruit. *See Butler*, 659 So. 2d at 582 (quoting *Colle Towing Co.*, 57 So. 2d at 172). This indicates that the statement is a bright-line rule that no type of estoppel can bind a public board if the minutes rule was not satisfied.

Other Mississippi Supreme Court precedent confirms that judicial estoppel cannot apply here. For example, a public board's stipulation that it entered a contract cannot cure a failure to comply with the minutes rule. *See KPMG*, 283 So. 3d at 673. In *KPMG*, the private party sought enforcement of engagement letters—even though they were not properly recorded on the minutes—on the basis that the government entity did not dispute that it entered the agreement. *Id.* The court rejected this argument, explaining that

---

[3] We therefore must make an "*Erie* guess" as to how the Mississippi Supreme Court would most likely decide this issue. *See Weatherly v. Pershing, L.L.C.*, 945 F.3d 915, 920 (5th Cir. 2019). In doing so, "we do not adopt innovative theories of state law" but rather seek to "apply that law as it currently exists." *Id.* (internal quotation marks and citation omitted). We are "not permitted to do merely what we think best; we must do that which we think the state supreme court would deem best." *Id.* at 920–21 (citation omitted).

a government entity "cannot stipulate that which is prohibited by law." *Id.* A stipulation "that an agreement was entered . . . does not eradicate the legal requirement that 'enough of the terms and conditions of the contract' be included in the minutes for a determination of the obligations and liabilities of both parties." *Id.* (quoting *Thompson*, 352 So. 2d at 797). Retro Metro's invocation of judicial estoppel is analogous. Retro Metro essentially argues that the City stipulated that the contract is valid in previous litigation, so it cannot take a conflicting position here.

The court's basis for rejecting the stipulation argument in *KPMG* likewise applies here. It explained that the purpose of the minutes rule is two-fold:

1.  That when authority is conferred upon a board, the public is entitled to the judgment of the board after an examination of a proposal and a discussion of it among the members to the end that the result reached will represent the wisdom of the majority rather than the opinion or preference of some individual member; and

2.  that the decision or order when made shall not be subject to the uncertainties of the recollection of individual witnesses of what transpired, but that the action taken will be evidenced by a written memorial entered upon the minutes at the time, *and to which the public may have access to see what was actually done.*

*Id.* (citation omitted). Put otherwise, the "underlying rationale" for the minutes rule is to provide "transparency for the benefit of the public." *Id.* It is not solely—or even primarily—for the benefit of the government entity or its board. Allowing a government entity to do what it otherwise could not do, just because it took such a position in court, would circumvent the rule and fail to protect the public interest at the heart of the rule. *See also Butler*, 659 So. 2d at 579 ("[T]he policy of protecting the public's funds for use by and

for the public is paramount to other individual rights which may also be involved.").

The Mississippi Supreme Court recognizes that "[t]he minutes rule produces harsh results." *Singing River MOB*, 342 So. 3d at 153 n.14. It nonetheless requires strict adherence. *See Colle Towing Co.*, 57 So. 2d at 172–73 ("[W]e are of the opinion that the public interest requires adherence [to precedent enforcing the minutes rule], notwithstanding the fact that in some instances the rule may work an apparent injustice."). Following the Mississippi Supreme Court's lead, we conclude that judicial estoppel cannot bind the City to a contract that did not satisfy the minutes rule.

## V.

Retro Metro's final argument is that the City waived its minutes-rule defense by not raising it in its answer. The City accurately responds that the minutes rule is not an affirmative defense. Rather the "minutes-rule argument goes to the issue of whether a contract . . . was ever formed in the first place." *Jackson County v. KPMG, LLP*, 278 So. 3d 1124, 1127 (Miss. 2019).

While the Mississippi Supreme Court has not directly addressed whether the minutes rule is an affirmative defense that can be waived, the Mississippi Court of Appeals has rejected this argument:

> [I]t is not *the City's* burden to prove that the contract was not recorded on the minutes. It was Warnock's burden—as part of its affirmative case—to show that the contract was duly recorded. . . . "[T]he existence of a valid and binding contract" is one of the basic elements of a claim for breach of contract, which the plaintiff must affirmatively plead and prove as part of its case. Conversely, the absence of a valid contract is not an affirmative defense that the defendant must plead affirmatively.

No. 24-60647

*Warnock & Assocs., LLC v. City of Canton*, 328 So. 3d 1254, 1262 (Miss. Ct. App. 2021) (internal citations omitted); *see also Weatherly*, 945 F.3d at 920 (listing "lower state court decisions" among the authorities we consider when making an *Erie* guess). We are persuaded that *Warnock* reflects how the Mississippi Supreme Court would resolve this issue. We therefore reject Retro Metro's final argument on appeal.

The judgment of the district court is AFFIRMED.