SENTELLE, Circuit Judge:
Over four thousand Colombians brought actions against Appellant Chiquita Brands International, Inc., and Chiquita Fresh North LLC (collectively, “Chiquita”), alleging claims involving torture, personal injury, and death under the Torture Victims Protection Act and the Alien Tort Statute. The district court in a series of orders denied motions to dismiss. Concluding that there were controlling questions of law that could be efficiently decided before further litigation, the district court certified those questions to us. On interlocutory review, we determine that the complaints do not state claims within the jurisdiction of the United States courts, and we reverse the denials of motions to dismiss and remand the matter for the entry of judgments of dismissal.
The Litigation
Because our ultimate disposition is not dependent on specificity of fact, we will *1188 only briefly review the history of the case. The plaintiffs filed lawsuits alleging liability on the part of Chiquita for engaging in concert of action with paramilitary forces in Colombia, including acts that plaintiffs alleged to constitute torture and to have resulted in personal injury and death. Plaintiffs asserted that the courts of the United States had jurisdiction under the Alien Tort Statute, 28 U.S.C. § 1350 (“ATS”), and the Torture Victims Protection Act, 28 U.S.C. § 1350 note (“TVPA”). After all the cases came under the control of one district judge, motions practice proceeded.
Appellant Chiquita filed motions to dismiss. The district court in several opinions considered those motions and other questions and ultimately denied the motions to dismiss. However, the court granted defendants’ motion for certification of certain controlling questions for interlocutory review under 28 U.S.C. § 1292(b). Pursuant to the authority of that certification, Chiquita timely petitioned this court for permission to appeal. On September 27, 2012, we granted that petition.
The questions certified for review are as follows:
1. Whether the “state action” element of claims for extrajudicial killing and torture brought under the ATS and TVPA requires Plaintiffs to plead facts establishing government involvement in the specific torture and killings alleged in Plaintiffs complaints.
2. Whether Plaintiffs, in alleging secondary liability for claims for war crimes, must plead facts showing a nexus between the Colombian civil war and the specific torture and killings for which Plaintiffs seek redress.
3. Whether Plaintiffs have adequately pled a claim for crimes against humanity, the elements of which have not been defined by any federal court of appeals.
4.Whether the civil tort laws of Florida, New Jersey, Ohio, and the District of Columbia apply to the extraterritorial conduct of Colombian paramilitaries against Colombian civilians that occurred inside Colombia as part of Colombia’s civil war.
Because we conclude that neither this court nor the district court has jurisdiction over the action, we ultimately will not answer those specific questions, but will dispose of the case for the reasons and in the manner set forth below.
Disposition
Although we accepted the interlocutory appeal for the review of specified questions, we are not limited to the address of those specific issues. “[T]he appellate court may address any issue fairly included within the certified order because ‘it is the order that is appealable, and not the controlling question identified by the district court.’ ” Yamaha Motor Corp., USA v. Calhoun, 516 U.S. 199, 205, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996) (emphasis in original) (quoting 9 J. Moore and B. Ward, Moore’s Federal Practice § 110.25[1] at 300 (2d ed.1995)). More fundamentally, no matter how a case comes before us, the court has the authority and the duty to determine its own jurisdiction. See, e.g., United States v. Shipp, 203 U.S. 563, 573, 27 S.Ct. 165, 51 L.Ed. 319 (1906).
As we noted above, plaintiffs asserted jurisdiction in the district court under the Torture Victims Protection Act and the Alien Tort Statute. Subsequent to the district court’s denial of the motions to dismiss and to its certification order of March 2012, the TVPA claims have become undeniably unviable. On April 18, 2012, barely three weeks after the entry of the certification order, the Supreme Court announced its decision in Mohamad v. Pale *1189 stinian Authority, — U.S. -, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012). In Mohamad, a unanimous Court held that the TVPA “authorizes liability solely against natural persons.” — U.S. at -, 132 S.Ct. at 1708. The defendant-appellants are Chiquita Brands International, Inc., and Chiquita Fresh North America, LLC. Neither is a natural person. The claims under the TVPA must be dismissed.
Unfortunately for the plaintiff-ap-pellees, the Supreme Court has also acted with respect to the ATS during the pen-dency of this appeal. In Kiobel v. Royal Dutch Petroleum Co., — U.S. -, 133 S.Ct. 1659, 185 L.Ed.2d 671 (2013), the High Court considered a case in some ways parallel to the one before us. The Kiobel plaintiffs sued a corporate defendant under the ATS, alleging the cooperation of the corporation with the government of Nigeria in the commission of torts allegedly within the compass of that statute. The statute provides that “the district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States.” 28 U.S.C. § 1350. The Kiobel plaintiffs alleged acts committed by Nigeria and the corporate defendant “in violation of the law of nations” in the territory of Nigeria. Kiobel, 133 S.Ct. at 1663. Similarly, plaintiff-appellants in this case alleged acts by Chiquita in conjunction with paramilitary actors within the territory of Colombia.
In Kiobel, the Supreme Court reviewed the history of the ATS, and we see no reason to rehash it here. We can dispose of the claims that are before us simply by applying the conclusion of the Kio-bel Court:
We therefore conclude that the presumption against extraterritoriality applies to claims under the ATS, and that nothing in the statute rebuts that presumption. “[TJhere is no clear indication of extraterritoriality here,” and petitioners’ case seeking relief for violations of the law of nations occurring outside the United States is barred.
—■ U.S. at-, 133 S.Ct. at 1669 (quoting Morrison v. Nat’l Austl. Bank Ltd., 561 U.S. 247, 264, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010)).
The Court noted in Kiobel that “all the relevant conduct took place outside the United States.” Id. All the relevant conduct in our case took place outside the United States. The Court further noted that “even where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application.” Id. Plaintiff-appellants attempt to anchor ATS jurisdiction in the nature of the defendants as United States corporations. Corporate defendants in Kiobel were not United' States corporations, but were present in the United States. The Supreme Court declared that “[cjorporations are often present in many countries, and it would reach too far to say that mere corporate presence suffices.” Id. The distinction between the corporations does not lead us to any indication of a congressional intent to make the statute apply to extraterritorial torts. As the Supreme Court said in Kiobel, “[i]f Congress were to determine otherwise, a statute more specific than the ATS would be required.” Id. There is no other statute. There is no jurisdiction.
Before concluding, we pause to respond briefly to the thoughtful comments of our dissenting colleague. The short answer to her concerns is expressed in the application of Kiobel to the facts of this case. Any tort here, whether styled as torture or under some other theory, occurred outside the territorial jurisdiction of the United States. The ATS contains *1190 nothing to rebut the presumption against extraterritoriality. We further observe that to apply the ATS to the allegations before us would be inconsistent with the Supreme Court’s earlier holding in Sosa v. Alvarez-Machain, 542 U.S. 692, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004). Sosa makes it clear beyond cavil that the ATS created no causes of action but is purely jurisdictional. “[A]t the time of enactment the jurisdiction enabled federal courts to hear claims in a very limited category defined by the law of nations and recognized at common law.” Id. at 712, 124 S.Ct. 2739. It is not nearly so clear, as our dissenting colleague believes, that acts described as “torture” come within the jurisdiction created by the statute over “a tort only, committed in violation of the law of nations or a treaty of the United States.” 28 U.S.C. § 1350.
As recognized by the Sosa Court, “[i]n the years of the early Republic, this law of nations comprised two principal elements:” (1) “the general norms governing the behavior of national states with each other” (executive and legislative in nature), and (2) “judge-made law regulating the conduct of individuals situated outside domestic boundaries and consequently carrying an international savor” (which are, according to Blackstone, mercantile questions arising from the customary practices of international traders and admiralty). 542 U.S. at 714-15, 124 S.Ct. 2739. Additionally, the Sosa Court noted that “[tjhere was ... a sphere in which these rules binding individuals for the benefit of other individuals overlapped with the norms of state relationships” (Blackstone mentioned three in specific: “violation of safe conducts, infringement of the rights of ambassadors, and piracy”). Id at 714-15, 124 S.Ct. 2739 (citing 4 W. Blackstone, Commentaries on the Laws of England 68 (1769)).
Nothing in the complaint before us falls within Blackstone’s three categories. It is true that a majority of the Supreme Court recognized the possibility that a court might recognize a cause of action outside the law of nations as it existed at the time of the enactment of the ATS, but the Court emphasized “that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases.” Id. at 727, 124 S.Ct. 2739. Therefore, the Court found itself “reluctant to infer ... a private cause of action where the statute does not supply one expressly.” Id. Even aside from the presumption against extraterritoriality— not overcome by the, allegations before us — Sosa counsels against recognizing a tort not previously recognized as within ATS jurisdiction.
It is true, as our colleague declares, that at least one circuit in a case decided long before the Supreme Court spoke in Sosa or Kiobel did conclude that extraterritorial torture fell within the law-of-nations category of the ATS. Filartiga v. Pena-Irala, 630 F.2d 876 (2d Cir.1980); see also Al Shimari v. CACI Premier Tech, Inc., 758 F.3d 516, 2014 WL 2922840 (4th Cir. June 30, 2014). However, this is by no means a unanimous conclusion of the circuits. In Saleh v. Titan Corp., 580 F.3d 1 (D.C.Cir.2010), the District of Columbia Circuit rejected the claim that acts of abuse and torture inflicted upon Iraqi national detainees by private government contractors working for the United States military in Iraq violated settled norms of international law and thus were actionable under the ATS.
The Saleh court noted that “[although torture committed by a state is recognized as a violation of a settled international norm, that cannot be said of private actors.” Id. at 15. Saleh, unlike Filartiga, came after the Supreme Court’s pro *1191 nouncements in Sosa. That same circuit reached a similar conclusion in Ali v. Rumsfeld, 649 F.3d 762 (D.C.Cir.2011). Even before the Sosa decision, in Sanchez-Espinoza v. Reagan, 770 F.2d 202 (D.C.Cir.1985), that court held that actions taken by executive officials, in their private capacity, supporting forces bearing arms against the government of Nicaragua did not violate any treaty or “customary international law” so as to confer original jurisdiction of a suit under the ATS. Id. at 206.
Again, we reiterate that the ATS does not apply extraterritorially. The torture, if the allegations are taken as true, occurred outside the territorial jurisdiction of the United States. As we emphasized above, to the extent the possibility of an exception to the presumption against extraterritoriality exists, the Kiobel Court made it clear that such exception could occur only, if at all, “where the claims touch and concern ... the United States ... with sufficient force to displace the presumption against extraterritorial application.” Kiobel, — U.S. at -, 133 S.Ct. at 1669. There is no allegation that any torture occurred on U.S. territory, or that any other act constituting a tort in terms of the ATS touched or concerned the territory of the United States with any force.
Finally, we consider our colleague’s humane observation that “the United States would fail to meet the expectations of the international community were we to allow U.S. citizens to travel to foreign shores and commit violations of the laws of nations with impunity.” Even assuming the correctness of the assumption that the present complaint states violations of the law of nations, the dissent’s observation is not relevant to our determination in this ease. Certainly, it may state desirable goals of foreign policy. But the determination of foreign policy goals and the means to achieve them is not for us. “The conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative — ‘the political’ — departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision.” Oetjen v. Cent. Leather Co., 246 U.S. 297, 302, 38 S.Ct. 309, 62 L.Ed. 726 (1918). This principle is most germane to the question of whether we should create a cause of action within the ATS jurisdiction against the caution of Sosa. In Sosa, the Supreme Court expressly stated, “a private right of action is better left to legislative judgment in the great majority of cases.” 542 U.S. at 727, 124 S.Ct. 2739. While this observation was prompted by generally applicable concerns with reference to the legislative function, the Supreme Court went on to note the particular applicability to the area in which we now act. “[T]he potential implications for the foreign relations of the United States of recognizing such causes should make courts particularly wary of impinging on the discretion of the Legislative and Executive branches in managing foreign affairs.” Id.
The Sosa Court further cautioned against judicial creation of such causes of action, observing “[w]e have no congressional mandate to seek out and define new and debatable violations of the law of nations, and modern indications of congressional understanding of the judicial role in the field have not affirmatively encouraged greater judicial creativity.” Id. at 728, 124 S.Ct. 2739. The Sosa Court also recognized that the Torture Victim Protection Act, supra, provides a basis for “federal claims of torture and extrajudicial killing,” but as we observed above, that legislation does not extend to the complaints before us. See id. The noble goals expressed in *1192 our dissenting colleague’s observation should perhaps guide the foreign policy of the United States, but that is not for us to say. Certainly, noble goals cannot expand the jurisdiction of the court granted by statute.
As we observed above, there is no other statute. There is no jurisdiction.
Conclusion
For the reasons set forth above, we reverse the orders denying the motions to dismiss and remand this case for dismissal.