[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-10211

_____

MYRIAM RAMIREZ GARCIA,
substituted in place of Antonio Gonzalez Carrizosa, et al.,

Plaintiffs,

JANE DOE 8,

Plaintiff-Appellant,

versus

CHIQUITA BRANDS INTERNATIONAL, INC.,

Defendant-Appellee,

CHIQUITA FRESH NORTH AMERICA LLC,
substituted in place of Antonio Gonzalez Carrizosa, et al.,

2                    Opinion of the Court                    21-10211

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:08-md-01916-KAM

_____

Before NEWSOM, MARCUS, Circuit Judges, and COVINGTON, District Judge.*

MARCUS, Circuit Judge:

This action is about many things. It's about one U.S. company facing over four thousand accusations of criminal conduct in a foreign country. It's about a putative class action that lasted more than a decade before the plaintiffs moved for class certification. But for us today, it's largely about one issue: whether we apply federal law or a foreign country's law on the availability of equitable class tolling in a Rule 23 class action. At bottom, it's about the reach of *Erie Railroad Company v. Tompkins*.[1]

For almost a decade, Chiquita Brands International, Inc. ("Chiquita") funded a violent, paramilitary terrorist group operating in Colombia. Chiquita's near-decade-long support for the

_____

* Honorable Virginia H. Covington, United States District Judge for the Middle District of Florida, sitting by designation.

[1] *See* 304 U.S. 64 (1938).

terrorist group spawned over a decade's worth of litigation. One putative class action under Federal Rule of Civil Procedure 23, *Cardona v. Chiquita Brands International, Inc.*, was filed against Chiquita in 2007, and it included only state and Colombian law claims after the plaintiffs' federal claims were dismissed by a panel of this Court on interlocutory review.[2]

After class certification in *Cardona* was denied in 2019, the Plaintiffs here -- who were unnamed class members in *Cardona* -- filed this Complaint in federal district court in New Jersey, raising state and Colombian law claims. The case was eventually transferred by the Judicial Panel on Multidistrict Litigation ("JPML") to the Southern District of Florida. That court dismissed the Colombian law claims as time-barred, despite the Plaintiffs' contention that they should have a right to equitable tolling under the rule announced by the Supreme Court in *American Pipe*[3] -- a federal, judge-made rule that tolls the statute of limitations for the claims of unnamed class members while a putative Rule 23 class action is pending certification. The Plaintiffs challenge that determination, and they also say that the district court abused its discretion in denying their request to amend the Complaint to (1) support their

---

[2] *See* 760 F.3d 1185 (11th Cir. 2014).

[3] *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974).

claim for minority tolling,[4] and (2) add claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, *et seq*.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. Although there is a square conflict between Colombian law and federal law in this diversity action, under *Erie*, Colombia's law prevails over the rule announced in *American Pipe*. However, the district court abused its discretion in dismissing the Plaintiffs' Complaint with prejudice without having allowed the Plaintiffs the opportunity to amend to support their minority tolling argument, although the district court correctly denied the Plaintiffs' application to amend their Complaint to include Alien Tort Statute claims.

## I.

The facts are straightforward. From 1997 to 2004, the Autodefensas Unidas de Colombia ("AUC") -- a violent paramilitary group in Colombia designated by the U.S. government as a Foreign Terrorist Organization ("FTO") -- killed, tortured, and assaulted thousands of Colombian civilians. Soon after Chiquita pleaded guilty in the District Court for the District of Colombia to one count of engaging in transactions with a specially-designated global terrorist group (the AUC) in violation of 50 U.S.C. § 1705(b), family members of banana workers and others who had been targeted and

---

[4] Under the doctrine of minority tolling, the statute of limitations for victims who were minors at the time of their injuries is tolled until those victims reach the age of majority. *See infra* Section III.A.

killed by the AUC filed a putative federal class action in federal district court in New Jersey against Chiquita on July 19, 2007 for its role in funding, arming, and otherwise supporting AUC. The *Cardona* plaintiffs brought a Rule 23(b)(1) class action, alleging claims under the ATS, the Torture Victims Protection Act ("TVPA"), and pursuant to New Jersey and Colombian law. In 2008, the JPML centralized the *Cardona* action and several similar actions in the Southern District of Florida.

In June 2011, the district court largely denied Chiquita's first motion to dismiss in the *Cardona* action, but Chiquita appealed that determination to our Court on an interlocutory basis. A panel of this Court dismissed the ATS and TVPA claims. *See Cardona*, 760 F.3d 1185 (11th Cir. 2014). The *Cardona* plaintiffs then filed a second amended complaint in November 2012, naming Chiquita and several of its former executives and employees as individual defendants. In March 2017, the *Cardona* plaintiffs sought to file a third amended complaint to add several hundred additional named plaintiffs -- the same Plaintiffs here. But the district court denied that motion, given the "advanced stage of the proceeding and imminent scheduling of the matter for trial." Class certification was denied on May 31, 2019. No longer putatively represented by the named plaintiffs in the *Cardona* action, the Plaintiffs sued Chiquita Brands in district court in New Jersey on March 25, 2020. *Complaint, Jane Doe 8, et al. v. Chiquita Brands Int'l, Inc.*, Civ. No. 20-3244, DE 1 (D.N.J. Mar. 2020). The Complaint asserted various claims under New Jersey law and violations of Colombian civil and

6                    Opinion of the Court                21-10211

criminal law.[5]   The JPML transferred the case to the Southern District of Florida.

The Plaintiffs' case was cut short.  The district court granted Chiquita's motion to dismiss with prejudice, dismissing the remaining claims brought under Colombian law as time-barred by Colombia's ten-year statute of limitations because the filing of the *Cardona* action did not toll it.  The district court also dismissed all New Jersey state law claims on extraterritoriality grounds -- a decision that the Plaintiffs do not appeal.

The court concluded that the Plaintiffs' Colombian law claims were time-barred after performing a two-step choice-of-law analysis.  For starters, the district court rejected the Plaintiffs' argument that, under *American Pipe*, the Colombian statute of limitations was tolled for the twelve years while class certification was pending in *Cardona*.  It explained that the judge-made rule announced in *American Pipe* concerned the tolling of the statute of limitations only for claims arising under federal law for Rule 23

---

[5] The Complaint asserted these causes of action under New Jersey law: War Crimes; Crimes Against Humanity; Terrorism; Material Support to Terrorist Organizations; Extrajudicial Killing; Torture; Cruel, Inhuman or Degrading Treatment; Violation of the Right to Life, Liberty and Security of the Person; Gross Violations of Internationally Recognized Human Rights; Wrongful Death; Assault and Battery; Intentional Infliction of Emotional Distress; Negligent Infliction of Emotional Distress; Negligence and Negligent Hiring; and Loss of Consortium.   Plaintiffs allege the assertion of "analogous" claims against Chiquita under Colombian law, pursuant to various sections of the Colombian Civil Code and the Colombian Criminal Code.

purposes. The district court agreed with many other federal courts, which have held that *Erie* compels the conclusion that state class tolling rules -- not the rule announced in *American Pipe* -- control in diversity class actions.

After finding that *American Pipe* did not apply to state law claims, the district court applied New Jersey choice-of-law rules because the case had originally been filed in New Jersey. The court observed that the laws of New Jersey and Colombia were in "true conflict" because, although one New Jersey appellate court had embraced *American Pipe*'s equitable tolling, Colombia had not recognized a similar principle. Considering that Colombian law claims were at issue, and the litigation's only connection to New Jersey was that Chiquita was incorporated there, the court concluded that Colombia had "a more significant relationship" to the parties in the litigation, and therefore, Colombian law applied. The bottom line, the court reasoned, is that Colombia's ten-year statute of limitations barred the Plaintiffs' claims.

The Plaintiffs moved to Alter or Amend the Final Judgment of Dismissal with Prejudice under Rule 59(e) of the Federal Rules of Civil Procedure. They sought to include additional facts to establish that some of the Plaintiffs still were entitled to minority tolling and to add claims arising under the Alien Tort Statute.

The district court rejected the application to amend. As for minority tolling, the court explained that the Plaintiffs failed to previously raise minority tolling as a method of avoiding the limitations bar in either their Complaint or their motion to dismiss, so

any application to amend the Complaint on those grounds had been waived.  The district court reasoned that it was clear from the face of the Complaint that all of the claims were barred by Colombia's statute of limitations, so the Plaintiffs needed to explain how those minor Plaintiffs' claims were still live -- and they failed to do so.  As for the Plaintiffs' ATS claims, the court denied the application on futility grounds.

The Plaintiffs timely appealed the dismissal of their Colombian law claims and the district court's denial of their request to amend to support their minority tolling argument and to add ATS claims.

## II.

We start with the district court's dismissal of the Plaintiffs' Colombian law claims for failure to state a claim, which we review *de novo*.  *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).  We also review *de novo* a district court's choice-of-law rulings, *Strochak v. Federal Ins. Co.*, 109 F.3d 717, 719 (11th Cir. 1997), and its determinations of foreign law.  *United States v. Gecas*, 120 F.3d 1419, 1424 (11th Cir. 1997); *see also* Fed. R. Civ. P. 44.1.  The Plaintiffs assert that the *American Pipe* tolling principle applies under *Erie* (or New Jersey or Colombian law), and class tolling saves their claims from being timed out by Colombia's statute of limitations.

We observe at the outset that *Erie Railroad Company v. Tompkins* and its progeny instruct us that the substantive law of Colombia must be applied in the same manner as we would apply

the substantive law of Texas or Florida. In *Day & Zimmerman, Inc. v. Challoner*, the Supreme Court considered a personal injury action resulting from an explosion in Cambodia. The district court, sitting in diversity, applied Texas law. 423 U.S. 3 (1975). The Fifth Circuit recognized that this was likely in error and "stated that were it to apply Texas choice-of-law rules, the substantive law of Cambodia would certainly control as to the wrongful death, and perhaps as to the claim for personal injury." *Id.* The appellate court nevertheless declined to apply choice-of-law rules that would result in the application of "the law of a jurisdiction that had no interest in the case, no policy at stake." *Id.* at 4.

The Supreme Court reversed and held that a federal court sitting in Texas must apply Texas choice-of-law rules. The Court explained, "[a] federal court in a diversity case is not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits." *Id.* In other words, a federal court cannot decline to apply the correct choice-of-law rule merely because it does not like the outcome -- even if that outcome results in the application of a foreign sovereign's law.

Various federal courts have followed this principle wherever the choice-of-law rule has taken them. *See, e.g., Abogados v. AT&T, Inc.*, 223 F.3d 932 (9th Cir. 2000) (applying Mexican law); *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842 (7th Cir. 1999) (applying Mexican law); *Brink's Ltd. v. S. African Airways*, 93 F.3d

1022 (2d Cir. 1996) (applying South African law); *CenTra, Inc. v. Estrin*, 639 F. Supp. 2d 790 (E.D. Mich. 2009) (applying Canadian law); *Faggionato v. Lerner*, 500 F. Supp. 2d 237 (S.D.N.Y. 2007) (applying French law). We now reach the same conclusion and hold that, in this case, Colombia must be considered just like a "state" for *Erie* and choice-of-law purposes.

But that's just the start of our analysis. The question presented forces us to dive deep into *Erie*'s "murky waters." *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Under *Erie* and its progeny, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). But as every first-year law student quickly discovers, the distinction between substance and procedure is often hazy. To guide our *Erie* analysis, we explicated the following four-step process in *Esfeld v. Costa Crociere*:

> The first step of the analysis is to determine whether state and federal law conflict with respect to the disputed issue before the district court. If no conflict exists, then the analysis need proceed no further, for the court can apply state and federal law harmoniously to the issue at hand. However, if the applicable state and federal law conflict, the district court must ask whether a congressional statute or Federal Rule of Civil Procedure covers the disputed issue. *Hanna v. Plumer*, 380 U.S. 460, 469–70 (1965). If a federal statute or rule of procedure is on point, the district

court is to apply federal rather than state law. If no federal statute or rule is on point, then the court must determine whether federal judge-made law, rather than state law, should be applied.

In making this determination respecting federal judge-made law, the district court should begin its inquiry by deciding whether failure to apply state law to the disputed issue would lead to different outcomes in state and federal court. *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945). That is, with respect to the state law standard at issue, the court must ask: "Would application of the standard have so important an effect upon the fortunes of one or both of the litigants that failure to apply it would unfairly discriminate against citizens of the forum State, or be likely to cause a plaintiff to choose the federal court?" *Gasperini*, 518 U.S. at 428 (internal punctuation omitted). If the answer is "no," then the district court should apply federal judge-made law. If the answer is "yes," meaning that state law is outcome-determinative, the court must apply the state law standard, unless affirmative "countervailing federal interests" are at stake that warrant application of federal law. *Id.* at 432, 116 S. Ct. at 2222; *Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 537 (1958). These steps, when taken together, constitute the proper analysis that a district court should employ in cases involving *Erie* issues.

289 F.3d at 1307 (citations omitted).

We now embark on *Esfeld*'s four-step *Erie* inquiry. At the end of our journey, we conclude that Colombia's interests outweigh the application of federal law.

### A.

Step one asks whether a conflict between federal and state law exists. Under federal law, *American Pipe*'s equitable rule would toll the Plaintiffs' claims while the *Cardona* plaintiffs awaited class certification because they were unnamed class members in that putative Rule 23 class action. *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 350–51 (1983). But determining whether a conflict with federal law exists requires us to first decide *which* state's tolling rule we measure against *American Pipe*: New Jersey's or Colombia's.

To choose between the two, we are obliged to apply the choice-of-law rules of the state in which the court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co*, 313 U.S. 487, 496 (1941). New Jersey's choice-of-law rules apply because the case began in New Jersey before the JPML transferred it to the district court in the Southern District of Florida. *See In re Volkswagen Audi Warranty Extension Litig.*, 692 F.3d 4, 17–18 (1st Cir. 2012).

In *McCarrell v. Hoffmann-La Roche, Inc.* the New Jersey Supreme Court crafted a two-step analysis to tackle a choice-of-law dispute over determining the applicable statute of limitations in a tort action. *See* 153 A.3d 207, 215 (N.J. 2017). *McCarrell* first requires us to decide "whether the laws of the states with interests in

the litigation are in conflict" because if the laws do not conflict, then the forum state's law governs. *Id.* at 216. Under New Jersey law, a conflict arises "when choosing between one or another state's statute of limitations is outcome determinative." *Id.*

Once a court has determined that a conflict exists, *McCarrell* instructs New Jersey's state courts to follow Section 142 of the Second Restatement in determining which state's statute of limitations controls. *Id.* at 221. Section 142 explains:

> In general, unless the exceptional circumstances of the case make such a result unreasonable:
>
> (1) The forum will apply its own statute of limitations barring the claim.
>
> (2) The forum will apply its own statute of limitations permitting the claim unless:
>
>> (a) maintenance of the claim would serve no substantial interest of the forum; and
>>
>> (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

Restatement (Second) of Conflicts of Law § 142 (Am. Law Inst. 1971).

Let's start with what each forum's law says. New Jersey law permits class tolling. *See Staub v. Eastman Kodak Co.*, 726 A.2d 955, 967 (N.J. Super. Ct. App. Div. 1999), *cert. denied*, 736 A.2d 527

14                    Opinion of the Court                21-10211

(N.J. 1999). But interpreting a foreign country's law (here Colombian law) is trickier. While observing that the court's "determination must be treated as a ruling on a question of law[,]" Federal Rule of Civil Procedure 44.1 permits a district court to "consider any relevant material or source, including testimony[.]" Fed. R. Civ. P. 44.1. Particularly because Colombia is a civil law country, "the interpretations of legal scholars are given significant weight in determining the meaning of statutory provisions." *See Palencia v. Perez*, 921 F.3d 1333, 1340 (11th Cir. 2019); *but see Mamani v. Sánchez de Lozada Sánchez Bustamante*, 968 F.3d 1216, 1246 (11th Cir. 2020) (citation and quotation marks omitted) ("[We are not] required to take those [expert] conclusions at face value. A court can engage in its own research and consider any relevant material thus found or to insist on a complete presentation by counsel, but is not obligated to take any such action.").

To aid in its determination of Colombian law, the district court turned to the affidavits submitted by Chiquita's expert, Professor Alberto Acevedo Rehbein ("Professor Acevedo"), and the Plaintiffs' expert, Professor Jaime Alberto Arrubla-Paucar ("Professor Arrubla"). Based on a thorough review of Colombian law and Professor Acevedo and Professor Arrubla's affidavits, the district court determined that Colombian law does not allow for equitable class tolling. We agree.

As Chiquita's expert explained, Colombia is a civil law country, so the source of legal authority is statutory law or legislative statutes -- not case law. Professor Acevedo clarified that Article

2536 of the Colombian Civil Code is the source of Colombia's ten-year "ordinary" statute of limitations, a prescription applicable to individual tort actions and that begins to run as of the occurrence of the damaging event. Both parties agree that this statute of limitations provision applies. The relevant question is whether Colombian law can equitably toll it.

According to Professor Acevedo, although the statute may be "suspended" for certain unusual reasons -- which only include minority tolling and the disruption caused by acts of "force majeure" rendering it impossible to file suit in Colombia -- there is no equitable rule comparable to "the common law notion of equitable tolling" applicable in civil actions. Nor did the Plaintiffs identify another civil law rule in Colombia (or a decision from Colombia's highest court) that would entitle them to equitable tolling.

We agree with Professor Acevedo's assessment of Colombian law. In the first place, the Plaintiffs make three significant concessions: (1) they agree that Colombia's ordinary, ten-year statute of limitations for tort actions applies; (2) they concede that "there is no *express* legal standard that states a special statute of limitations or that indicates when said term begins to run" here; and (3) they admit that "this question has rarely been discussed by the Supreme Court of Justice[,]" which is Colombia's highest court. Plaintiffs'-Appellants' App'x 867 ¶¶ 37–39 ["App'x"] (emphasis added). In short, Colombian law has not spoken on class tolling. And that silence speaks volumes because, as a civil law country, Colombia establishes its laws almost exclusively through criminal

and civil statutes -- not from the decisions of its courts.  As Professor Acevedo explained:

> Colombia's Constitution provides that "law is the primary source of rights."  Because Colombia is of the civil (Roman) law tradition, the word "law" in Colombia's Constitution means statutory law or legislative statutes.  As used in the Colombian Constitution, "law" does not include case law.  "Stare decisis" is not applicable in Colombia.  Rather, the sole source of law is the law itself -- statutes enacted by the legislature.

App'x 929–30, ¶ 9 (footnotes omitted).

Colombia's system of class actions -- which bears some similarities to our federal system of class actions under Federal Rule of Civil Procedure 23 -- does not change the calculus on equitable tolling.  Article 88 of the 1991 Colombian Constitution specifically provides for a system of class actions.  To develop the principles set forth in Article 88, the Colombian Congress enacted the Popular and Group Actions Act in 1998, which created two systems of collective action: acción popular (popular action) and acción de grupo (group action).  L. 472, agosto 5, 1998, [art. 1] Diario Oficial [D.O.] (Colom.); *see also* Manuel A. Gómez, *Will the Birds Stay South? The Rise of Class Actions and Other Forms of Group Litigation Across Latin America*, 43 U. MIAMI INTER-AM. L. REV. 481, 496 (2012).  Unlike the popular action, which allowed plaintiffs to seek injunctive relief, the group action was "devised to offer a redress mechanism to a group, category or class of individuals uniformly

21-10211              Opinion of the Court                17

situated with respect to an event or product that allegedly caused them harm[,]" allowing those aggrieved plaintiffs to collectively "seek monetary compensation for individual damages suffered by class members." Gómez, *supra*, at 497–98.

Article 53 of the Popular and Group Actions Act explains the following procedures regarding the admission of group actions:

> Within ten (10) working days of filing a lawsuit, the competent judge will admit or dismiss it. In the court order admitting the lawsuit, in addition to having such court order sent the defendant within ten (10) days, the judge will order for each defendant to be personally notified. In class-action lawsuits, the members of the class action suit will be informed through the press or through any effective means considering the potential beneficiaries thereof. For these purposes, the judge may simultaneously use different means of communication.

L. 472, agosto 5, 1998, [art. 53] Diario Oficial [D.O.] (Colom.). Notably, group or class actions have a statute of limitations of only two years, compared to ten years for individual tort actions.

"With respect to class certification, the only two factors analyzed by the court to decide whether a claim should proceed as a group action are whether the alleged harm by all class members arose out of a common cause, and whether the two-year statute of limitation has expired." Gómez, *supra*, at 499. After certification is completed, class members can still opt in within twenty days and opt out within five days following the term established to effect

service of process.  *Id.* at 499–50.  The end of the opt-out period is accompanied by a settlement hearing and a final decision on the merits, which has *res judicata* effect for those class members who did not opt out.  *Id.* at 500.  If a class member did opt out of the group action, she is still entitled to file an individual claim under Colombia's ordinary ten-year statute of limitations for tort actions.

Our own review of scholarship on the legal system of Colombia and civil law countries supports the bottom-line conclusion that Colombia lacks an equitable class tolling rule.  Along with adopting a Roman Law system, Colombia "imported the French doctrine of separation of powers, as well as France's theory of sources of law."  Luz Estella Nagle, *Evolution of the Colombian Judiciary and the Constitutional Court*, IND. 6 INT'L & COMP. L. REV. 59, 69 (1995).  This separation of governmental power "established a judiciary subservient to the role of the legislative and executive branches[.] . . . As such, there was a rigid anti-judicial review attitude."  *Id.* at 70.  Judges were relegated to "a supporting role" and were only charged with articulating and assiduously applying the legislative code.  *Id.*

Consequently, "civil law systems are 'closed,' in the sense that every possible situation is governed by a limited number of general principles."  William Tetley, *Mixed Jurisdictions: Common law v. Civil Law (Codified and Uncodified)*, 60 LA. L. REV. 677, 706 (2000).  Because the legislative code governs the outcome of a case, "there is no binding rule of precedent" in civil law systems -- "[e]ach new decision must be grounded on the authority of the legislative

text which provides the basis of continuity and stability." Joseph Dainow, *The Civil Law and the Common Law: Some Points of Comparison*, 15 AM. J. COMP. L. 419, 426 (1966); *see also* Federal Judicial Center, *A Primer on the Civil-Law System* 36 (1995) ("In civil-law systems, the role and influence of judicial precedent, at least until more recent times, has been negligible[.] . . . Civil-law judges or their scholar-advisers initially look to code provisions to resolve a case, while common-law judges instinctively reach for casebooks to find the solution.").

Because of the strict limits that a civil law system imposes on its judges, "the civil law judge lacks inherent equitable power." John H. Merryman & Rogelio Pérez-Permdomo, *The Civil Law Tradition: An Introduction to the Legal Systems of Europe and Latin America* 52 (4th ed. 2019). While civil law countries can delegate equitable power to judges, their legislatures make the deliberate choice to delegate power in limited, carefully defined circumstances. *Id.* at 52–53. Equitable doctrines -- like *American Pipe*'s class tolling rule -- could become the law in civil law countries only if the legislature passes such a rule or when it explicitly delegates to the courts the power to create that doctrine. Neither has transpired in Colombia, so Colombian law does not allow for class tolling.

The Plaintiffs still maintain that Colombian law recognizes class tolling in these unique circumstances. Professor Arrubla offers that "*it is possible*" that Colombia's ordinary ten-year statute of limitations could be construed to create an exception for "imprescriptible" civil actions arising from "crimes against humanity."

App'x 866 ¶ 33 (emphasis added).  Or, he maintains, Colombia's statute of limitations would be suspended due to impossibility or interrupted because of the *Cardona* litigation.

Neither argument is persuasive.  The Plaintiffs' imprescriptibility argument fails because it presumes that Colombian courts would implicitly read an equitable tolling provision into Colombian civil laws where one does not currently exist -- an assumption hard to square with Colombia's civil law system.  And the Plaintiffs' impossibility and interruption arguments similarly force us to play a guessing game about how loosely related provisions of Colombia's Civil Code and its Procedural Code could save the claims of unnamed class members who relied on a federal putative class action in the United States.  Because inferring an equitable tolling principle in Colombian law is not this Court's prerogative, Colombia's ordinary ten-year statute of limitations for individual tort actions applies without the benefit of class tolling.

New Jersey law allows for class tolling, while Colombian law does not.  We next must decide whether that conflict is "outcome determinative."  *See McCarrell*, 153 A.3d at 216.  For the same reasons why applying federal law over Colombian law is outcome determinative under step three from *Esfeld*, *see infra* at Section II.C, the conflict between Colombian and New Jersey law is plainly outcome determinative here: The claims would be timely if we applied New Jersey law, but time-barred if we applied Colombian law.

Because an outcome-determinative conflict exists, and the forum (New Jersey) would permit the claim to proceed, *McCarrell* tells New Jersey's state courts to apply New Jersey law unless "(a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence."  153 A.3d at 221 (N.J. 2017) (quotation marks omitted).

Applying these principles, as the district court did in this case, we conclude that Colombian law applies.  Under New Jersey law, the singular fact that a party has been incorporated in the state, standing alone, does not vest New Jersey with a substantial interest in the matter.  *See id.* at 217.  The only connection the Plaintiffs' claims have to New Jersey is that it's where Chiquita is incorporated.  The Plaintiffs' claims are all based on Colombian law; they arose out of Chiquita's criminal conduct in Colombia; and the claims only involve Colombian citizens.  New Jersey cannot fairly be said to have a "substantial interest" in this matter.  *See Heavner v. Uniroyal, Inc.*, 305 A.2d 412, 414 n.3, 418 (N.J. 1973), *abrogated on other grounds by McCarrell*, 153 A.3d 207 (declining to apply New Jersey law because North Carolina was where the parties were located, where the cause of action arose, and where all the relevant incidents occurred).  Plainly, Colombia has a far more "significant relationship" with the parties and the misconduct.  Notwithstanding Chiquita's incorporation in New Jersey, New Jersey has no direct ties to the acts or the victims.

The Plaintiffs claim, nevertheless, that New Jersey has a more substantial interest in applying its class tolling rule than Colombia, and that New Jersey has a more significant relationship with the class tolling issue. But they fail to explain why the focus of the "substantial interest" inquiry should be placed on that rule -- rather than on the claims at issue. In any event, the *Cardona* action was not even filed in a New Jersey state court, so declining to apply New Jersey's class tolling rules would not frustrate New Jersey's class action procedure.

To recap, in the choice between New Jersey and Colombian law, New Jersey's conflict-of-laws analysis leads us to pick Colombian law. We return to step one from *Esfeld*: whether federal law (the rule announced in *American Pipe*) and state law (Colombian law) are in conflict. They are because federal law provides for equitable class tolling while Colombian law does not. Our *Erie* analysis continues.

## B.

The second step in the calculus is easy. *Esfeld* instructs us to "ask whether a congressional statute or Federal Rule of Civil Procedure covers the disputed issue." 289 F.3d at 1307. If they do, the federal rule trumps the state rule. *Hanna*, 380 U.S. at 473–74. But because judge-made rules -- like the one found in *American Pipe* -- do not qualify as Federal Rules of Civil Procedure under *Hanna v. Plumer*, this inquiry does not apply to them. *See Carbone v. CNN,*

*Inc.*, 910 F.3d 1345, 1349 (11th Cir. 2018).  We move on to step three from *Esfeld.*

## C.

Next up is the outcome-determination inquiry -- "whether failure to apply state law to the disputed issue would lead to different outcomes in state and federal court."  *Esfeld*, 289 F.3d at 1307. In *Guaranty Trust Company v. York*, the Supreme Court propounded an "outcome-determination" test, explaining that courts should ask the following question to determine whether the application of a law would be outcome determinative: "[D]oes it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" 326 U.S. at 109. But the *Guaranty Trust* test "was never intended to serve as a talisman"; its application must instead further "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws."  *Hanna*, 380 U.S. at 466–68.

Even under *Hanna*'s modified version of *Guaranty Trust*, applying the rule in *American Pipe* in diversity class actions is "outcome determinative."  For one, *American Pipe* would result in forum-shopping.  An unnamed class member of a former Rule 23 putative class action (where class certification was denied) would have a longer time to file her individual state law claim in federal court than in state court because of *American Pipe*, so she would likely choose the federal forum.  And this result would also cause the inequitable administration of the laws (at least when federal

class actions are filed predicated on state law claims) because unnamed class members in a federal forum would benefit from the class action vehicle, while also individually getting a longer statute of limitations period. By effectively modifying a state's statute of limitations, *American Pipe* would "alter[] the mode of enforcement of state-created rights in a fashion sufficiently 'substantial' to raise the sort of equal protection problems to which the *Erie* opinion alluded." *See Hanna*, 380 U.S. at 469.

The Plaintiffs say that a putative class member who waits to file her individual claim is not engaging in forum-shopping because she is just following what *American Pipe* tells her to do. But that counter is unavailing because the federal forum affords her the substantive advantage of filing past the state statute of limitations.

## D.

That just leaves one last step before applying state law: deciding whether the countervailing federal interests militate in favor of applying the rule in *American Pipe* over Colombia's interests in not recognizing a class-tolling rule. *See Esfeld*, 356 U.S. at 537. They do not.

Let's begin with the obvious. For one, state statutes of limitation are substantive rules that federal courts sitting in diversity presumptively apply. *Gasperini*, 518 U.S. at 427. And significantly, *American Pipe* and its successor, *Crown, Cork & Seal Co., Inc. v. Parker*, involved *federal* causes of action. In neither of those cases was jurisdiction founded on diversity. *American Pipe* involved a

claim arising under the federal antitrust laws, and *Crown* dealt with a lawsuit filed under Title VII of the Civil Rights Act of 1964.  Finally, and most importantly, a tolling rule tends to follow the accompanying statute of limitations -- so long as the former operates as an "integral" part of the latter.  *Walker v. Armco Steel Corp.*, 446 U.S. 740, 746 (1980).

*Walker v. Armco Steel Corporation* is the launchpad for this part of our *Erie* analysis.  In *Walker*, the Supreme Court considered "whether in a diversity action the federal court should follow state law or, alternatively, Rule 3 of the Federal Rules of Civil Procedure in determining when an action is commenced for the purpose of tolling the state statute of limitations."  *Id.* at 741.  Although the plaintiff in that case had filed his complaint nominally within Oklahoma's statute of limitations period, Oklahoma law did not consider the action "commenced" for that purpose until the defendant had been served -- and the plaintiff failed to serve the defendant within the statutory window.  *Id.* at 741–42.  The plaintiff argued that Rule 3 -- rather than state law -- governed when an action began, which would have allowed the plaintiff's claim to survive despite his delayed service.  The Supreme Court disagreed because:

> Rule 3 governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations.  In contrast to Rule 3, the Oklahoma statute is a statement of a substantive decision by that State that actual service on, and accordingly actual notice by, the defendant is an integral part of the several policies served by the

> statute of limitations. . . . As such, the service rule
> must be considered part and parcel of the statute of
> limitations. Rule 3 does not replace such policy de-
> terminations found in state law. Rule 3 and [the Ok-
> lahoma Statute] . . . can exist side by side, therefore,
> each controlling its own intended sphere of coverage
> without conflict.

*Id.* at 751–52 (citations omitted); *see also Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 534 (1949) (similar).

Under *Walker*'s teachings, we think we must apply Colombia's no-class-tolling rule if it's integral to the operation of Colombia's statute of limitations. *See Cambridge Mut. Fire Ins. Co. v. Claxton*, 720 F.2d 1230, 1232–33 (11th Cir. 1983) (determining whether Georgia's statute regarding tolling was "integral" to the operation of its statute of limitations, consistent with *Walker*). Moreover, the Plaintiffs tell us very little about Colombia's no-class-tolling law and its class action system, apart from offering aspirational arguments about how Colombian law might equitably toll the ten-year statute of limitations in the circumstances of this case. That silence is notable, after all, because the Plaintiffs shoulder the burden of proving that Colombia's interests are nothing more than procedural in nature. *See Chang v. Carnival Corp.*, 839 F.3d 993, 996 (11th Cir. 2016) ("[I]t is the plaintiff's burden to show that equitable tolling is warranted.").

Based on what we know about Colombia's class action system, we make two observations. First, Colombia's class action system in some ways is structured like Federal Rule of Civil Procedure

23. Thus, for example, the named plaintiffs in both Colombian group actions and Rule 23 class actions, prior to certification, putatively represent unnamed class members and pursue relief that can bind unnamed class members. *See* Fed. R. Civ. P. 23(e)(2) (outlining several factors for a court to consider in deciding to adopt a proposal that binds class members). Unnamed class members in both systems are informed of the suit through notice that is "most practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(b). And both systems allow class members to opt out of the class action. *See* Fed. R. Civ. P. 23(e)(4).

Second, and significantly, Colombia's class action system places a strong premium on processing claims with dispatch. Not only do Colombia's judges have just ten days to decide whether to "admit" or "deny" group or class actions, but, as we've seen, Colombian law provides for a short two-year statute of limitations for group or class actions -- even though it has adopted a ten-year statute of limitations for individual tort actions. Contrast that with Rule 23, which places no similar time limitation on class certification decisions, allows the district court to revisit the class certification determination until final judgment is entered, and allows for interlocutory appeals to the circuit courts of appeal from those decisions. *See* Fed. R. Civ. P. 23(f). The time gap between group and individual actions suggests that Colombia wants group action decisions to be decided swiftly.

Although the decision of whether to "admit" or "deny" a group action under Colombian law is significantly more

straightforward than whether to certify a class action under Rule 23, that difference corroborates our understanding of Colombia's interests in its group action system.  Colombian courts consider only whether there's a common cause between the class members, whether there are at least twenty members in the class, and whether the two-year statute of limitations has passed when deciding whether to certify a class.  Rule 23 requires far more than just satisfying numerosity and commonality to certify a damages class action, which is essentially the type of Rule 23 class action to which a group action is most analogous because the group action seeks monetary damages.  In addition to demanding adequacy of representation and ensuring that the named plaintiff is typical of unnamed class members, Rule 23(b)(3) also requires that the plaintiffs seeking a damages class action show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These differences underscore that Rule 23 places a greater emphasis on accuracy (that is, knowing that the class-action vehicle is the better form of adjudication) than speed.

The most obvious conclusion we draw from these observations, and from what the parties have told us about Colombian law, is that the absence of a class tolling rule in Colombia is part of and "integral" to the operation of its statutes of limitation and its expeditious group action system.  *See Walker*, 446 U.S. at 746.  As we

previously discussed, *see supra* at Section II.A, Colombia's failure to codify class tolling *is* a policy choice made by its legislature under its civil law system. Further, allowing for "impossibility" and "minority tolling" in Colombia's legal system suggests that Colombia has created "equitable" exceptions to its statutes of limitation in two limited circumstances. But because Colombia has created only these two exceptions without also creating one for class tolling, the better inference is that Colombia's no-class-tolling rule is not just some procedural afterthought, but is instead a purposeful policy choice made by its legislature -- one that we must honor under *Erie*.

A no-class-tolling rule furthers the operation of Colombia's group action system by, among other things, ensuring that group admission decisions will be decided *quickly*. Allowing for class tolling in this case would extend the disposition of this litigation far past Colombia's statute of limitations for both group and individual actions. It would undermine Colombia's significant interest in the expeditious disposition of class actions, just like how applying Federal Rule of Civil Procedure 3 over Oklahoma's tolling rule would have undermined Oklahoma's statute of limitations in *Walker*. This too suggests that Colombia's no-class-tolling rule is substantive, and any countervailing federal interests cannot outweigh the application of Colombian law.

Moreover, the overwhelming weight of circuit authority supports today's result. We begin with the Fifth Circuit's decision in *Vaught v. Showa Denko K.K. See* 107 F.3d 1137 (5th Cir. 1997).

In *Vaught*, the Fifth Circuit applied a Texas rule proscribing class tolling, notwithstanding the federal interests at play:

> [T]his Texas rule clearly conflicts with the well-established federal practice on class action tolling. We conclude, however, that, for this case, the federal interest in that practice does not trump the Texas tolling rule. Unlike the situation in *Byrd*[*v. Blue Ridge Rural Electric Cooperative*] or *Hanna*, neither the federal constitution nor federal law would be displaced. On the other hand, a tolling rule is an "integral part" of a statute of limitations. Therefore, Texas' interest in its tolling rule has quite considerable depth.

*Id.* at 1147 (citations omitted); *see also Weatherly v. Pershing, LLC*, 945 F.3d 915, 925–28 (5th Cir. 2019) (re-affirming *Vaught* and concluding that, because Florida law does not allow the use of class tolling, state interests prevail in the *Erie* analysis).

Just like the Texas legislature in *Vaught*, Colombia seems to have adopted a class action system that illustrates "a *deliberate* policy choice by [its] legislature" favoring the speedy resolution of class action claims. *See* 107 F.3d at 1147 (emphasis added); *see also Weatherly*, 945 F.3d at 927 (emphasis in original) (explaining that "[t]he Florida Legislature *did speak* by enacting" a statute that did not allow for class tolling). Barring class tolling in these circumstances "is a means of enforcing [that] statute of limitations." *See Vaught*, 107 F.3d at 1147.

The Fourth, Second, and Seventh Circuits' decisions on this issue are also persuasive. *See generally Casey v. Merck & Co.*, 653

F.3d 95 (2nd Cir. 2011); *Wade v. Danek Med., Inc.*, 182 F.3d 281 (4th Cir. 1999); *Hemenway v. Peabody Coal Co.*, 159 F.3d 255 (7th Cir. 1998). In *Wade v. Danek Medical, Inc.*, the plaintiff was a putative member of two medical device class actions in the Eastern District of Pennsylvania and the Eastern District of Louisiana. Eventually, those class actions were not certified, and the plaintiff then filed an action in the Eastern District of Virginia. 183 F.3d at 284. That court, sitting in diversity, determined that Virginia law applied, that the statute of limitations had run, and that Virginia would not equitably toll the statute of limitations. *Id.* at 288. The panel in *Wade* thus faced a square conflict between the rule announced in *American Pipe* and Virginia law.

The Fourth Circuit determined that, under *Erie*, Virginia law should prevail. The court read *Walker* (in addition to other companion cases) "to stand for the proposition that, in any case in which a state statute of limitations applies -- whether because it is 'borrowed' in a federal question action or because it applies under *Erie* in a diversity action -- the state's accompanying rule regarding equitable tolling should also apply." *Id.* at 289. The Second Circuit, facing almost exactly the same issue in *Wade* and relying in part on *Wade*'s analysis, reached the same result. *See Casey*, 653 F.3d at 100 ("[W]e now join the majority of our sister courts that have addressed the issue in holding that a federal court evaluating the timeliness of state law claims must look to the law of the relevant state to determine whether, and to what extent, the statute of limitations should be tolled by the filing of a putative class action in another

jurisdiction.").  And the Seventh Circuit also summarily reached the same conclusion.  *See Hemenway*, 159 F.3d at 265 (citation omitted) ("*American Pipe* . . . dealt with claims under federal law, for which the period of limitations was also federal; this enabled the Supreme Court to craft tolling rules as a matter of federal law. When state law supplies the period of limitations, it also supplies the tolling rules.").[6]

Under *Esfeld*'s four-step inquiry, we conclude that Colombia's law, which does not recognize equitable class tolling, must be respected.  We, therefore, hold that the equitable rule announced in *American Pipe* did not toll Colombia's ten-year statute of limitations during the pendency of the *Cardona* litigation.

---

[6] The Plaintiffs' reliance on the Eighth Circuit's decision in *Adams Public School District v. Asbestos Corporation* is misplaced.  *See* 7 F.3d 717 (8th Cir. 1993).  For one thing, *Adams*'s note that *American Pipe* is "sufficiently strong to justify tolling in a diversity case when the state law provides no relief," *id.* at 718–19, is purely *dictum* because the court held that a new state law prevented the plaintiff's claim from being timed out by the relevant statute of limitations.  *Id.* at 719 ("This new statute is clear evidence of the North Dakota legislature's intent that the six-year statute of limitations [does] not bar asbestos claims like the school district's.  We can, therefore, serve both the federal and state interests by applying the *American Pipe* rule so the present claim is not barred.").  And even still, the Eighth Circuit did not have to evaluate the *Walker* issue -- that is, whether the state tolling rule was integral to the operation of the statute of limitations -- so its reasoning is distinguishable.

### III.

With *Erie* behind us, we turn to the district court's denial of the Plaintiffs' Rule 59(e) motion to amend. The Plaintiffs charge the court with abusing its discretion in denying them an opportunity to amend the Complaint to include facts supporting the right of some of their members to minority tolling. They also say that the district court should have allowed them to amend the Complaint to include ATS claims.

### A.

We begin with the Plaintiffs' minority tolling argument. "[O]ur cases say that a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quotation marks omitted). But a plaintiff's failure to plead facts that would prevent a dismissal on statute of limitations grounds does not typically warrant dismissal with prejudice. Federal Rule of Civil Procedure 15(a)(2) allows a party to "amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." *Id.*

We have explained that Rule 15(a)(2) "severely restrict[s]" a district court's ability to dismiss with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (quotation marks omitted). "Generally, where a more carefully drafted complaint might state

a claim, a plaintiff must be given *at least one* chance to amend the complaint before the district court dismisses the action with prejudice." *Id.* (emphasis added) (cleaned up). There are exceptions, though. Under Rule 15(a), a district court need not give leave to amend under three circumstances:

> (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments . . . ; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile.

*Id.*[7]

The Plaintiffs concede "the original complaint did not specify [the] Plaintiffs' minority status." Appellant's Br. at 57. Moreover, we already know that, from the face of the Complaint, the Plaintiffs' claims are barred under the Colombian ten-year statute of limitations. Under *La Grasta v. First Union Securities, Inc.*, the Plaintiffs needed to then show why the statute of limitations would not apply -- and their failure to do so warranted dismissal. *See* 358 F.3d at 845.

But it did not warrant a dismissal with prejudice. Of the three reasons offered in *Bryant v. Dupree*, none applies here. First,

---

[7] As an aside, it is uncontested that both New Jersey and (more pertinently) Colombian law provide for minority tolling. *See* N.J. Stat. § 2A:14-21; App'x. 939–40 (citing Colombian Civil Code, Art. 2530). If certain Plaintiffs were minors when they or their loved ones were harmed by the AUC, then those Plaintiffs would be entitled to tolling until they reached the age of eighteen.

there is no evidence of bad faith or delay on the part of the Plaintiffs, nor did the Plaintiffs repeatedly fail to cure the deficiencies in their minority tolling claim. In *Bryant*, we held that because the plaintiffs had stated that, if given the chance to amend, they could correct their pleading deficiencies, the district court abused its discretion in refusing to give them such an opportunity. 252 F.3d at 1164. The circumstances are no different here. In their proposed Amended Complaint, the Plaintiffs may not have provided the birthdates of the minor victims to corroborate their claim that certain Plaintiffs ought to be entitled to minority tolling. But their proposed Amended Complaint identified each Plaintiff who was a minor before March 25, 2010, and this offers enough by way of factual allegation to plausibly state a claim for minority tolling for those Plaintiffs.

Second, Chiquita cannot explain -- nor can we divine any reason -- why allowing the Plaintiffs just one other opportunity to plead their entitlement to minority tolling would cause Chiquita any prejudice. It is true that the underlying litigation has spanned more than a decade, but "[t]he lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of the plaintiffs, does not justify denying the plaintiffs the opportunity to amend their complaint." *See Bryant*, 252 F.3d at 1164.

Third, amendment would not be futile because, by corroborating their claim to minority tolling with the Plaintiffs' birthdays, the Plaintiffs can more than plausibly say that those Plaintiffs'

claims are not time-barred.  Assuming that the Plaintiffs have accurately characterized the age of the minor members, the statute of limitations would not begin running for those victims until they turned eighteen -- and the earliest date that would be for the *oldest* minor victim is March 26, 2010.  Because the Plaintiffs filed suit on March 25, 2020, each minor victim's claim is plausibly timely.  *See Thomas v. Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (explaining that the district court abused its discretion in not allowing amendment when "it [did] not appear beyond doubt that [plaintiff] cannot prove a set of facts which would entitle him to relief").

Chiquita doesn't quibble about any of these points.  Instead, it simply asserts that the Plaintiffs *waived* any right to claim minority tolling because they "failed both in the opposition to Chiquita's motion to dismiss and in the briefing on the Rule 59(e) motion to provide adequate factual support for their tolling claims."  Appellee's Br. at 51.  But Chiquita misconstrues the significance of waiver of an argument in this context.  *Cf. Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (explaining that "[f]iling a motion is the proper method to request leave to amend a complaint").  Even if the Plaintiffs made only a brief reference to minority tolling in their opposition to Chiquita's motion to dismiss, that failure should not warrant the hefty sanction of dismissal with prejudice because they properly requested leave to amend.  And because the Plaintiffs still raised the issue of minority tolling in their Rule 59(e) motion, the issue is properly before us.

Thus, as we see it, the district court abused its discretion in failing to allow the Plaintiffs to amend their Complaint.

## B.

In their Rule 59(e) motion, the Plaintiffs also sought to amend the Complaint to include claims arising under the Alien Tort Statute in order to preserve those claims for appeal while they awaited the Supreme Court's decision in *Nestle USA, Inc. v. Doe*. *See* 141 S. Ct. 1931 (2021). The district court denied this request because amendment would be futile. We affirm because the Supreme Court's decision came, and it forecloses the Plaintiffs' ATS claims. *See id.* at 1935 (holding that domestic corporations are not liable under the ATS for causing injuries abroad based on decisions made in the United States).

★ ★ ★

*Erie*'s waters are murky, but the result in today's choice-of-law dispute is clear: Colombian law prevails over the rule announced in *American Pipe*. We also hold that the district court erred by failing to allow the Plaintiffs to amend to plead minority tolling, although the district court correctly denied their attempt to add ATS claims. We therefore **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings consistent with this opinion.